312 So.2d 856 (1975)
STATE of Louisiana
v.
James NICHOLAS, Jr.
No. 55742.
Supreme Court of Louisiana.
April 24, 1975.
C. Jerome D'Aquila, New Roads, for defendant-appellant.
William J. Guste, Jr., Atty. Gen., Barbara Rutledge, Asst. Atty. Gen., Samuel C. Cashio, Dist. Atty., Charles H. Dameron, Asst. Dist. Atty., for plaintiff-appellee.
MARCUS, Justice.
Defendant, James Nicholas, Jr., was charged by bill of information with the crime of manslaughter. He was tried by a *857 jury on April 19, 1973 in the Eighteenth Judicial District Court for the Parish of West Baton Rouge. He was found guilty as charged and subsequently sentenced to 6 years at hard labor. On appeal, he relies upon two assignments of errors for reversal of this conviction and sentence.

ASSIGNMENT OF ERROR NO. 1
Defendant alleges that the trial judge erred when he denied his motion to quash the bill of information on the ground that the petit jury venire was improperly drawn, selected or constituted in that it was composed of women who had not previously filed with the clerk of court a written declaration of their desire to be subject to jury service, contrary to the provisions of Article 7, Section 41 of the Louisiana Constitution of 1921 and Article 402 of the Louisiana Code of Criminal Procedure.
The identical issue was presented to this court in State v. Milton, 310 So.2d 524, handed down March 31, 1975. That case involved a petit jury venire, also in West Baton Rouge Parish, and a trial held on October 2, 1974, prior to the United States Supreme Court's decisions in Taylor v. Louisiana, 419 U.S. 522, 95 S.Ct. 692, 42 L.Ed.2d 690 (1975) and Daniel v. Louisiana, 420 U.S. 31, 95 S.Ct. 704, 42 L.Ed.2d 790 (1975).[1]
This court held in Milton that the trial judge did not err in denying defendant's motion to quash under the same contention as is made in this case. We there stated that the United States Supreme Court's decision in Taylor justified in retrospect the trial judge's ruling recognizing the Louisiana constitutional and statutory provisions as violations of the federal constitution. We concluded that the Daniel decision held that Taylor, as a matter of federal law, need not be applied retroactively due to the Supreme Court's recognition that a retroactive application of Taylor "would do little, if anything, to vindicate the Sixth Amendment interest at stake and would have a substantial impact on administration of criminal justice in Louisiana...." Milton held that the Daniel rationale does not constitute an assertion that the Louisiana constitutional and statutory provisions were valid when defendant challenged the petit jury venire by filing his motion to quash. This court said: "To the contrary, the import of the Taylor and Daniel decisions is that the Louisiana procedure, granting women an automatic exemption from jury service violated the Sixth Amendment to the United States Constitution." [2] Hence, for the reasons assigned in the Milton decision, we find no merit in this assignment of error.

ASSIGNMENT OF ERROR No. 2
Defendant asserts in this assignment of error that the trial judge erred in refusing to grant a mistrial after the foreman of the jury had announced during deliberations that two jurors were unable to read and write. The judge stated:
It is my opinion in this case that the fact that you can't read and write really did not justify a mistrial.
In his per curiam, the judge states that the reason he held that a mistrial was not justified in this case was that the "documents presented to the jury were read to them and they were not allowed to bring written evidence into the jury room with them anyway." The judge stated that he would not accept a juror who could not read and write if such information were made known to him before trial; however, where such information is not discovered *858 until after the commencement of trial, he considered that he had a right to determine, in a particular case, whether the juror's inability to read and write should cause a mistrial.
The state submits that the unsworn statement of the foreman does not constitute proof that the two jurors were unable to read and write. The state argues that defendant had the burden of asking the foreman to be sworn to testify to that effect and further of requesting that the individual jurors be interrogated under oath as to their lack of ability to read and write. Accordingly, it is argued the defendant has failed to prove that the two jurors lacked the ability to read and write. Defendant counters that to require him to have offered such proof would have been a vain and useless act since the trial judge accepted the foreman's statement that the jurors were illiterate and nevertheless refused to order a mistrial. Moreover, the jurors were asked this question by the judge during the voir dire examination and they replied that they could read and write.
La.Code Crim.P. article 401(3) provides:
. . . . . .
In order to qualify to serve as a juror, a person must:
. . . . . .
(3) Be able to read, write, and speak the English language;
To resolve this issue, we will assume certain facts favorable to the position of the defendant. First, we will assume that the two jurors could not, in fact, read and write. Second, we will assume that the jurors were properly interrogated on voir dire as to their ability to read and write and that they made false statements in regard thereto. Finally, we know that the incompetency of these jurors was not discovered until after commencement of the trial, i.e., during the deliberations of the jury.
Article 796 of the Code of Criminal Procedure does not render us much assistance, as this article provides that, if it is discovered after a juror has been accepted and sworn that he is incompetent to serve, the court may, at any time before the first witness is sworn, order the juror removed and the panel completed in the ordinary course. As previously indicated, the discovery of the jurors' incompetency was first made during deliberations.
Likewise, the prior jurisprudence on this issue is not of much assistance to us in view of the specific provisions of article 775 of the Code of Criminal Procedure which was adopted by the legislature in 1966 and became effective January 1, 1967.
Article 775 of the Code of Criminal Procedure provides in pertinent part:
A mistrial may be ordered, and in a jury case the jury dismissed, when:
(6) False statements of a juror on voir dire prevent a fair trial.
Upon motion of a defendant, a mistrial shall be ordered, and in a jury case the jury dismissed, when prejudicial conduct in or outside the courtroom makes it impossible for the defendant to obtain a fair trial, or when authorized by Article 770 or 771.
It is clear from the provisions of this article that, when false statements are made by a juror on voir dire, it is discretionary with the trial court whether or not to order a mistrial. On the other hand, a mistrial shall be ordered when the prejudicial conduct makes it impossible for the defendants to obtain a fair trial.
The jurisprudence interpreting article 775 makes it clear that mistrial is a drastic remedy and that it is only authorized in specified instances where unnecessary prejudice results to the accused. See, State v. Kenner, 290 So.2d 299 (La.1974); State v. Clouatre, 262 La. 651, 264 So.2d 595 (1972). It is too well settled to require *859 citation of authority that this court has the right to review the discretionary acts of the trial judge. Likewise, equally well settled is the rule that this court will not disturb the ruling of the trial judge absent a finding of abuse of that discretion.
We find no such abuse here. In view of the fact that the only written exhibits had been fully read aloud to the jurors during the trial, and none were taken with them during their deliberations, literacy or the lack of it is not of such significance in this case as to warrant the drastic remedy of a mistrial. Obviously, the jurors could speak and understand English, for had it been otherwise, this would have been apparent on voir dire. Under these circumstances, we find defendant was not prevented from obtaining a fair trial by the failure of the jurors to disclose their inability to read and write during the voir dire examination. Hence, the trial judge correctly refused to order a mistrial. There is no merit to this assignment of error.

DECREE
For the reasons assigned, the conviction and sentence are affirmed.
SUMMERS, J., dissents and will assign reasons.
BARHAM, J., concurs.
SUMMERS, Justice (dissenting).
The Court's treatment of the issue presented by Assignment of Error No. 1 is an exercise in expediency, a disregard of the Constitution, Code and decisions of this Court in full force and effect on April 19, 1973. At that time the pertinent constitutional and statutory provisions were:
"... no woman shall be drawn for jury service unless she shall have previously filed with the clerk of the District Court a written declaration of her desire to be subject to such service." La.Const. art. VII, ¶ 41 (1921).
"A woman shall not be selected for jury service unless she has previously filed with the clerk of court of the parish in which she resides a written declaration of her desire to be subject to jury service." La.Code Crim.Proc. at 402.
At the time of this trial and the formation of the jury venire, the foregoing constitutional and codal provisions were in full force and effect. Both had been repeatedly upheld by numerous decisions of this Court. State v. Womack, 283 So.2d 708 (La.1973), and the cases cited there. The proposition had also been approved by the United States Supreme Court in Hoyt v. Florida, 368 U.S. 57, 82 S.Ct. 159, 7 L.Ed.2d 118 (1961).
Both the Constitution and the Code, therefore, providing as they then did that "no woman shall" and "a woman shall not be drawn for jury service", were mandatory.
When a constitution or statute mandates that a certain course of conduct shall be followed, or that it shall not take place, the implicit meaning is that the contrary is prohibited. No reasonable or rational conclusion to the contrary is permissible. Constitutional provisions are interpreted by the same rules of construction applied to statutes. Barnett v. Develle, 289 So.2d 129 (La.1975); 16 Am.Jur.2d, Constitutional Law, 59. One of the most elementary and fundamental rules of statutory construction prescribes that whatever cannot be done by express statutory prohibition cannot be done by indirection. Anderson v. Martin, 375 U.S. 399, 84 S.Ct. 454, 11 L.Ed.2d 430 (1964). Statutory construction may be an art, but it must not be artful. U.S. v. Parker, 376 F.2d 402 (5th Cir. 1967). The maxim "expression unius est exclusio alterius" has forceful application in the context of this case.
A bedrock doctrine of constitutional law ordains that a written constitution is not *860 only the direct and basic expression of the sovereign will, it is also the absolute rule of action and decision for all departments and offices of government with respect to all matters covered by it, and must control as it is written until it is changed by the authority which established it. No function of government can be discharged in disregard of or in opposition to the paramount law. The state constitution is the mandate of a sovereign people to its servants and representatives. No one of them has a right to ignore or disregard its mandates; and the legislature, the executive officer, and the judiciary cannot lawfully act beyond its limitations. The proposition is so elementary and so essential to an orderly, rational and logical system of law it requires no authority for its support. 16 Am.Jur.2d Constitutional Law ¶ 56.
"Since the constitution is intended for the observance of the judiciary as well as the other departments of government and the judges are sworn to support its provisions, the courts are not at liberty to overlook or disregard its commands, or countenance evasions thereof. It is their duty in authorized proceedings to give effect to the existing constitution and to obey all constitutional provisions, irrespective of their opinion as to the wisdom of such provisions, and irrespective of the consequences." 16 Am.Jur.2d, Constitutional Law, 105. See also Williams v. Louisiana, 103 U.S. 637, 26 L.Ed. 595 (1880).
All courts of this State were therefore compelled by the Constitution, the Code and the authority of this Court to comply. La.Code Crim.Proc. art. 2. To disregard this explicit mandate is a violation of constitutional, legislative and judicial authority. No system of law can long endure where disregard of constituted authority prevails; and where the concept becomes rampant, anarchy follows. This Court should not and cannot condone this example.
It was not until the decision in Taylor v. Louisiana, 419 U.S. 522, 95 S.Ct. 692, 42 L.Ed.2d 690, on January 21, 1975 that the quoted provisions of the Louisiana Constitution and Code were declared to be unconstitutional, as depriving the criminal defendant of his Sixth Amendment right to trial by an impartial jury drawn from a fair cross section of the community. Shortly thereafter on January 27, 1975, in Daniel v. Louisiana, 420 U.S. 31, 95 S.Ct. 704, 42 L.Ed.2d 790, the United States Supreme Court held that the decision in Taylor v. Louisiana, as a matter of federal law, was not retroactive.
Thus, the repeated decisions of this Court prior to January 21, 1975 are unaffected by the decision in Taylor. For the same reason all convictions affirmed prior to that time are valid and final. It plays havoc with all notions of even-handed justice to apply the Constitution and Code in one manner to affirm a conviction, and apply it differently in another case to reach the same result. That is the result the State urges this Court to reach, and such is the result of our decision in the case at bar and in State v. Milton, 310 So.2d 529 (La.) decided March 31, 1975.
I would set aside this conviction and sentence and grant a new trial.
NOTES
[1] In State v. Rester, 309 So.2d 321, handed down February 24, 1975, we held that this court would follow the Daniel case, and the Taylor case would not be enforced retroactively in Louisiana.
[2] Article 7, Section 41 of the Louisiana Constitution of 1921 was in effect until the new Constitution of 1974 became effective at midnight on December 31, 1974. The new Constitution does not contain a provision granting women exemption from jury service unless they volunteer, and article 402 of the Louisiana Code of Criminal Procedure was repealed by Acts 1974, Ex.Sess., No. 20, § 1, effective Jan. 1, 1975.