348 So.2d 983 (1977)
STATE of Louisiana
v.
Joseph B. FORBES, Sr., Richard Jones and James A. Jones.
No. 59174.
Supreme Court of Louisiana.
June 20, 1977.
Dissenting Opinion August 23, 1977.
Dwight D. Reed, Opelousas, for defendants-appellants.
William J. Guste, Jr., Atty. Gen., Barbara Rutledge, Asst. Atty. Gen., Morgan J. Goudeau, *984 III, Dist. Atty., Robert Brinkman, First Asst. Dist. Atty., for plaintiff-appellee.
SANDERS, Chief Justice.
The State jointly charged the defendants, Joseph B. Forbes, Sr., Richard Jones, and James A. Jones, with armed robbery, a violation of LSA-R.S. 14:64. A unanimous jury found them guilty as charged. Each defendant received forty years imprisonment at hard labor.
The defendants appeal. They rely on five assignments of error for reversal of their convictions and sentences. One defendant, Joseph Forbes, raises an additional argument in a pro se brief. As the defense did not brief or argue twenty-one assignments of error, we consider them abandoned. State v. Phillips, La., 337 So.2d 1157 (1976); State v. Blanton, La., 325 So.2d 586 (1976); State v. Carlisle, La., 315 So.2d 675 (1975).
We adduce the following context facts:
James Jones, dressed in female clothing, and Joseph Forbes entered an Opelousas bank, while Richard Jones remained in the car. At gun point, James Jones and Joseph Forbes ordered two bank tellers and a customer to lie on the floor face down. After tying and handcuffing them, the two defendants emptied the cash drawers. As they threw the money and a gun into the waiting car, the police arrived and arrested all three defendants.

ASSIGNMENT OF ERROR NO. 1
The defendants complain of the denial of a challenge for cause of a prospective juror, Mr. Savoie. They allege that he was unable to accept the law as given by the court. LSA-C.Cr.P. Art. 797(4). Subsequently, defendant Forbes excused him with a peremptory challenge.
Louisiana Code of Criminal Procedure Article 800 provides in pertinent part:
"A defendant cannot complain of a ruling refusing to sustain a challenge for cause made by him, unless his peremptory challenges shall have been exhausted before the completion of the panel."
In State v. Dreher, 166 La. 924, 118 So. 85 (1928), this Court stated:
"In the trial of the several accused jointly, the peremptory challenges of the defense cannot be said to be exhausted as long as any of such challenges are left to one or more of the accused. State v. Breaux et al., 104 La. 540, 29 So. 222; State v. Shields, 33 La.Ann. 1410; State v. Creech, 38 La.Ann. 480; State v. Marceaux, 50 La.Ann. 1137, 24 So. 611."
Joseph Forbes exercised only eleven of his twelve peremptory challenges. Therefore, the defense cannot complain of a denial of a challenge for cause.
Assuming, however, that this Court may treat this assignment, we find that the trial judge properly denied the challenge for cause. Mr. Savoie's entire voir dire examination reveals that he was willing and able to accept and apply the law as the court instructed. See State v. Passman, La., 345 So.2d 874 (1977); State v. Johnson, La., 324 So.2d 349 (1975).
This assignment of error is without merit.

ASSIGNMENT OF ERROR NO. 2
Defense counsel twice asked a panel of six prospective jurors if any of them were related to a law enforcement agent. Clifford Frilot, Sr., responded in the negative, one time verbally and the other time by nodding his head. After completion of the voir dire, all parties accepted Mr. Frilot.
During trial, the defense moved for a mistrial on the ground that Mr. Frilot had perjured himself on voir dire. One of his sons was a city policeman and another was a deputy sheriff, employed as a night jailer. Immediately, the State proposed a stipulation whereby both sides would agree to substitute the alternate juror for Mr. Frilot. The defense rejected the proposal and insisted on its motion.
At the hearing on the motion, Mr. Frilot initially could not recall counsel asking him if he were related to any law enforcement officers. After hearing a play back of the *985 question and answer, he explained that he understood the question to refer to the arresting officers in this case. Mr. Frilot stated:
". . . I don't have to lie to nobody, not a man at sixty-eight. I been here all my life. I told you the truth. Everything I said there was nothing but the truth. Now, I might have misunderstood something."
(Tr. vol. 7, p. 435.)
After reception of evidence, the court denied the motion for a mistrial.
A mistrial is a drastic remedy. It is authorized only in specified instances where unnecessary prejudice results to the accused. When a juror makes false statements on voir dire, the trial judge has discretion in ruling on a motion for mistrial. LSA-C.Cr.P. Art. 775; State v. Nicholas, La., 312 So.2d 856 (1975). This Court will not disturb the trial judge's ruling absent a clear showing of an abuse of that discretion. State v. Nicholas, supra.
The juror testified that he misunderstood the question asked and that the mistake was unintentional. He responded truthfully to the question he thought propounded, whether he was related to the arresting officers. He also testified that the fact that his sons were law enforcement officers would not influence him and that he would base his decision solely on the evidence presented at trial. Both father and sons testified that they never discussed this case with each other.
The evidence supports a conclusion that Mr. Frilot was an impartial juror. Thus, we hold that the trial judge did not abuse his discretion in denying a mistrial. State v. Madison, La., 345 So.2d 485 (1977); State v. Calloway, La., 343 So.2d 694 (1977) and cases cited therein. See State v. Rounsavall, La., 337 So.2d 190 (1976).
This assignment of error is without merit.

ASSIGNMENT OF ERROR NO. 3
The defense objected to the admission of two color photographs (S-13 and S-14) depicting the turquoise Tempest Pontiac in which Richard Jones sat during the armed robbery. They aver that the State failed to lay a proper foundation for their introduction. The court overruled the objection.
In State v. Freetime, La., 334 So.2d 207 (1976), we stated:
"It is a well-settled rule that a photograph need not be identified by the person who took it to be admissible in evidence. State v. Browning, 290 So.2d 322 (La.1974); State v. Mitchell, 278 So.2d 48 (La.1973); State v. Fox, 251 La. 464, 205 So.2d 42 (1967). Generally, photographs are admissible in evidence when they are shown to have been accurately taken, to be a correct representation of the subject in controversy and when they tend to shed light upon the matter before the court. State v. Lacoste, 256 La. 697, 237 So.2d 871 (1970). Sufficiency of identification of a photograph for purpose of admissibility thereof into evidence rests largely within the discretion of the trial judge. State v. Fox, supra."
Although the photographer's notation appears on the back of the photographs, the State did not call him as a witness.
Numerous witnesses described the car involved in the robbery as a turquoise Pontiac. Officer Clay, one of the arresting officers, testified that S-13 and S-14 depicted the car the defendants used. Hence, the identification was sufficient, and the testimony of the photographer was not required.
We conclude that the trial judge properly admitted the photographs.
Assuming, however, that the photographs were inadmissible, their admission was harmless error. S-4, a black and white photograph, shows a Pontiac parked on the side of the bank. This car bears the same license number as the car in S-13 and S-14. As the jury previously saw a photograph of the same car, the defendants were not prejudiced by the admission of S-13 and S-14. LSA-C.Cr.P. Art. 921.
This assignment of error is without merit.

*986 ASSIGNMENT OF ERROR No. 4
The defense alleges that the trial court erred in admitting a pair of boots worn by James Jones during the robbery. They contend that the State failed to lay a proper foundation.
In State v. Dotson, 260 La. 471, 256 So.2d 594 (1971), this Court stated:
"To admit demonstrative evidence at a trial, the law requires that the object be identified. The identification can be visual, that is, by testimony at the trial that the object exhibited is the one related to the case. It can also be identified by chain of custody, that is, by establishing the custody of the object from the time it was seized to the time it is offered in evidence.
"The law does not require that the evidence as to custody eliminate all possibility that the object has been altered. For admission, it suffices if the custodial evidence establishes that it is more probable than not that the object is the one connected with the case. A preponderance of the evidence is sufficient. State v. Coleman, 254 La. 264, 223 So.2d 402; State v. Martin, 250 La. 705, 198 So.2d 897; State v. Bertrand, 247 La. 232, 170 So.2d 386.
"The lack of positive identification goes to the weight of the evidence, rather than to its admissibility. Ultimately, connexity of physical evidence is a factual matter for determination by the jury. State v. Wright, 254 La. 521, 225 So.2d 201; State v. Whitfield, 253 La. 679, 219 So.2d 493; State v. Progue, 243 La. 337, 144 So.2d 352; 2 Wharton's Criminal Evidence (12th ed.), § 673, p. 617."
Officer Clay, an arresting officer, identified the boots as those worn by James Jones. Similarly, Officer Latiolais, the other arresting officer, testified that the boots at trial were the same type James Jones wore.
In addition to this visual identification, the State established a sufficient chain of custody for admission. Officer Clay took the boots from James Jones. He gave them to Captain Mason, who inventoried, tagged, and placed them in a locked filing cabinet in his office. When he removed the boots for delivery to the prosecutor, he inventoried them again. The prosecutor locked them in a closet in the District Attorney's office until trial.
We are convinced that the State's evidence sufficiently identified the boots as those worn by James Jones during the armed robbery. Therefore, the trial judge properly admitted them.
This assignment of error is without merit.

ASSIGNMENT OF ERROR NO. 5
The defendants allege that the trial court erred in denying their motion for a change of venue. In the motion the defense avers that the extensive pre-trial publicity so inflamed and prejudiced the community that it would be impossible to select a fair and impartial jury.
Louisiana Code of Criminal Procedure Article 622 provides:
"A change of venue shall be granted when the applicant proves that by reason of prejudice existing in the public mind or because of undue influence, or that for any other reason, a fair and impartial trial cannot be obtained in the parish where the prosecution is pending.
"In deciding whether to grant a change of venue the court shall consider whether the prejudice, the influence, or the other reasons are such that they will affect the answers of jurors on the voir dire examination or the testimony of witnesses at the trial." [Emphasis supplied.]
In State v. Berry, La., 329 So.2d 728 (1976), this Court set forth the principles pertinent to a motion for a change of venue. We stated:
"In a motion for change of venue the defendant has the burden of showing that he cannot obtain a fair trial in the parish where the prosecution is pending. State v. Stewart, La., 325 So.2d 819, decided Jan. 19, 1976; State v. Dillard, 320 So.2d 116 (La.1975); State v. Bell, [La., 315 So.2d 307 (1975)]; State v. Richmond, 284 So.2d 317 (La.1973). Article 622 of *987 the La.Code of Criminal Procedure requires more than mere knowledge by the public of the facts surrounding the offense. It requires, in addition, proof of such prejudice in the public mind that a fair and impartial trial cannot be obtained in the parish. State v. Stewart, supra; State v. Dillard, supra; State v. Flood, 301 So.2d 637 (La.1974).
"Under the test adopted by the La. Code of Criminal Procedure, the fact that a jury can be selected because the requisite number of prospective jurors are not subject to a valid challenge for cause does not establish that a change of venue is not necessary. As we stated in State v. Bell, supra, quoting from Official Revision Comment (b) to La.C.Cr.P. art. 622:
`* * * The change of venue concept should operate where the state of the public mind against the defendant is such that jurors will not completely answer honestly upon their voir dire, or witnesses will be so affected by the public atmosphere that they will not testify freely and frankly.' 315 So.2d at 310.
"* * *
"The granting or denial of change of venue rests within the sound discretion of the trial judge and his ruling denying the motion will not be disturbed unless the evidence affirmatively shows that the ruling was erroneous and an abuse of judicial discretion. State v. Dillard, supra; State v. Stewart, supra; State v. Richmond, supra." [Emphasis supplied.]
The armed robbery occurred on January 5, 1973. For several days thereafter, two Opelousas radio stations and an Opelousas newspaper extensively covered the crime. These reports disseminated the following information: that Planter's Bank, Indian Hills Branch, was robbed at 11:51 a. m., on January 5, 1973; that two black men, one dressed as a woman, entered the bank, brandished a gun on two bank employees, and tied them up; that they also tied up a customer who entered the bank while the robbery was in progress; the names of these three people tied; that nine minutes later two police officers apprehended the two men who left the bank and a third black man who waited in a nearby car; the names, ages, and addresses of the suspects booked; the names of the arresting officers; the amount of money recovered; that the State charged all three with armed robbery and also charged James Jones with aggravated assault; that the three suspects were transferred to parish jail for security reasons; that the Opelousas Police Chief and City Council commended the quick actions of the police; and the name of the judge who would try the case. The Chief of Police and the District Attorney's office provided the news media with some of the above information. In addition, the newspaper ran pictures of the money recovered and of James Jones dressed in female clothing.
On January 19, 1973, a newspaper article stated that trial was fixed and bond set for Joseph Forbes. It also gave the name of his attorney. Another article published the same day reported that Joseph Forbes said in open court "in `militant rhetoric'" that he was being held as a political prisoner. On January 21, 1973, the newspaper announced that this trial would receive the tightest security ever provided in that court, and that one suspect is a professed Black Panther. On January 22, 1973, the newspaper stated that Richard Jones and James Jones pled not guilty amid tight security; that the State would try them the same date as Joseph Forbes; and that court appointed counsel would represent Richard Jones and James Jones. On February 28, 1973 and March 1, 1973, the newspaper stated that defense motions, including a motion for a change of venue, delayed the trial. All these articles included other basic information repeated in the previous news coverage.
The court conducted the venue hearing on February 28, 1973. The defendants introduced the newspaper articles and radio broadcast scripts of the above described publicity. To ascertain the effect of this publicity, the court issued twenty "John Doe" subpoenas to the various communities *988 from which the jury would be chosen. The court excused two men subpoenaed: one because he was a convicted felony and unqualified for jury service, and another because he refused to accept the law as instructed. Of the remaining persons, two knew nothing of the case. They assured the court that they would base their decision solely on the evidence adduced at trial. Because of publicity or conversation, five had formed opinions as to the defendants' guilt or innocence. However, they testified that these opinions would yield to the evidence and to the defendants' presumption of innocence, and that they would set the opinions aside and decide the case based on the law, as instructed by the judge. The remaining eleven men knew something about the case, but none had formed an opinion as to the guilt or innocence of the defendants. Therefore, they testified that they would be open-minded, fair, and impartial jurors who would consider the defendants innocent until proven otherwise by the State, and who would consider only the evidence at trial as a basis for their decision.
A reading of the entire "dry run" voir dire indicates that those questioned had only a superficial knowledge of the case. No one knew the details. Most knew only the bare essentials: that a robbery occurred and that the police caught the suspects outside the bank. Apparently, the publicity had made no lasting impression as to the guilt of the defendants.
Trial began on March 1, 1973. The court swore twelve jurors and one alternate. The voir dire examination of the first three jurors, transmitted in a supplemental record at our request, indicates that, while each of the jurors knew of the crime, none had a fixed opinion as to guilt. The voir dire of the remaining nine jurors and the alternate juror discloses the following: Four jurors were unfamiliar with the circumstances of the crime. Five knew some facts of the armed robbery but had formed no opinion as to the defendants' guilt or innocence. One juror knew of some facts from the publicity and had formed an opinion based on that knowledge. The juror assured the court that he could and would set aside that opinion and base his decision solely upon the evidence adduced at trial.
In our opinion, the defendants have failed to establish either that there was "such prejudice in the public mind that a fair and impartial trial [could not] be obtained in [that parish]" or that "the state of the public mind against the defendant[s] [was] such that jurors [did] not completely answer honestly upon their voir dire, or witnesses [were] so affected by the public atmosphere that they [did] not testify freely and frankly." State v. Berry, supra.
We conclude that the trial court properly denied the motion for a change of venue.
This assignment of error is without merit.

PRO SE ASSIGNMENT OF ERROR NO. 1
In his pro se brief, the defendant, Joseph Forbes, argues an issue raised in a motion in arrest of judgment. He alleges that this prosecution for armed robbery places him in double jeopardy since he pled guilty to the robbery of Planter's Bank in federal court.
Louisiana Code of Criminal Procedure Article 597 provides:
"Double jeopardy does not apply to a prosecution under a law enacted by the Louisiana Legislature if the prior jeopardy was in a prosecution under the laws of another state or the United States."
By the terms of this article, the plea of guilty in federal court to the violation of the federal bank robbery statute does not bar a prosecution in state court for the violation of the state armed robbery statute. Under the doctrine of double jeopardy, a subsequent prosecution by a different sovereign is constitutionally permissible. Bartkus v. Illinois, 359 U.S. 121, 79 S.Ct. 676, 3 L.Ed.2d 684 (1959); 21 Am.Jur.2d, Criminal Law, § 192, p. 244. Hence, the trial court properly denied the motion in arrest of judgment.
This assignment of error is without merit.
For the reasons assigned, the convictions and sentences are affirmed.
*989 TATE, J., concurs only in the result of the disposition of Assignment 2.
DIXON, J., dissents.
CALOGERO, J., dissents and assigns reasons.
CALOGERO, Justice (dissenting).
When a prospective juror makes a false statement on voir dire examination and that fact is discovered during the trial, the remedy is a mistrial. C.Cr.P. art. 775. I believe that the juror in question here, Clifford Frilot, Sr., did make a false statement, and that the trial judge erred in failing to grant defendant's requested mistrial. On voir dire examination, Frilot answered twice (once orally, once with a nod) that he had no relatives or close friends in law enforcement, although he actually had two sons in law enforcement, one a city policeman and the other a deputy sheriff assigned to the jail. When confronted with the tape recording of his answers, he said that he had misunderstood the question, thinking that the question referred only to his possible relationship with persons involved in the trial.
The situation arose in the following manner. The prospective panels of jurors were sitting in the courtroom where they were questioned by counsel. Repeatedly, defense counsel asked whether the jurors had close friends or relatives who were law enforcement officers. Many persons answered that they had relatives and/or friends who were variously connected with law enforcement in the rural parish. These were questioned and excused. (They were Mr. Lagrange, brother-in-law in sheriff's department; Mr. Courville, brother-in-law and various friends who are law enforcement officers; Mr. Lafleur, acquaintances who were law enforcement officers; Mr. Gardiner, acquaintances who were law enforcement officers; Mr. Breau, friends on police force; Mr. Savoie, cousins who are state troopers.) The lengthy record makes clear that all prospective panels heard the questioning of each of these persons.
Moreover, it is incontestably true that the panel on which Mr. Frilot sat was asked: "Are any of you related to or very close friends to the law enforcement, any law enforcement agent, including the District Attorney's office?" and that Mr. Frilot answered "No, sir." Another prospective juror on the same panel, Mr. Pitre, said that the sheriff of the parish was his uncle. He was questioned extensively and excused. Again counsel asked, "Now, are [sic] there anybody else on the panel that's related to any of the law enforcement officers, other than what we've explored, to Mr. Pitre?" The record reflects that all the persons, including Mr. Frilot, responded negatively, but defense counsel persisted, "Or close friends to any law enforcement officer?" Another member of Mr. Frilot's panel then said, "Oh, I know some. I'm from here. Everybody knows `um." He was likewise excused.
After Mr. Frilot was sworn in as a juror, he was present in the jury box as defense counsel repeatedly asked succeeding panels of jurors if they had any friends or relatives who are "members of law enforcement offices, * * * police department, sheriff's department, state police . . . ." and he heard jurors admit such relationships, be questioned extensively, and be excused. (These were Mr. Taylor, whose wife's cousin was in law enforcement; Mr. Duplechin, close friend in law enforcement; Mr. Bernard, brother worked for sheriff's department; Mr. Dupre, friend of sheriff and other law enforcement officials; Mr. Fontenot, first cousin on Opelousas police force; Mr. Thenis, friends in Eunice police department; Mr. Soileau, fourth cousin in sheriff's office; Mr. Ballard, distant cousin in Opelousas police department; Mr. Truitt, acquaintances on force; Mr. Carroll, one friend in law enforcement; Mr. Marks, friend of sheriff and some deputies.) These persons were all excused although they stated that they had never spoken to their friend or relatives about the prosecution, and did not know if they were even involved in this particular case.
It is inconceivable to me that a man could have heard the same questions asked person after person (the voir dire examination in *990 this case fills at least five volumes) and "misunderstood" when he personally was asked the question three different times. I believe that the juror made a false statement during his voir dire and that the remedy should have been that requested by counsel, a mistrial.