529 So.2d 1379 (1988)
STATE of Louisiana, Appellee,
v.
Troy B. DUPLISSEY, Appellant.
No. 19730-KA.
Court of Appeal of Louisiana, Second Circuit.
August 17, 1988.
Rehearing Denied September 15, 1988.
*1380 Jones & Johnson by Jerry Jones, Monroe, for appellant.
William J. Guste, Jr., Atty. Gen., Baton Rouge, James A. Norris, Jr., Dist. Atty., West Monroe, John Spires, Asst. Dist. Atty., Bastrop, for appellee.
Before MARVIN, NORRIS and LINDSAY, JJ.
NORRIS, Judge.
The defendant, Troy Bret Duplissey, was charged by bill of information with one count of distribution of marijuana, LSA-R. S. 40:966. Duplissey was found guilty of attempted distribution of marijuana by a jury of twelve. He was sentenced to three years at hard labor, plus a fine of $500 and costs, or 100 days in default. The execution of the hard labor sentence was suspended and Duplissey was placed on five years supervised probation, subject to certain conditions, one of which was that he serve 90 days in jail.
Defendant assigns two errors with respect to the trial court's denial of a motion for mistrial and a motion for new trial. Defendant's alleged grounds for both are the same: an unqualified juror serving on the panel, and inappropriate communications between the bailiff and the jury foreperson. Finding no reversible error in defendant's assignments of error, we affirm his conviction.

FACTS
According to testimony at trial, the facts are these: Undercover narcotics investigator Bill Berry of the Ouachita Parish Sheriff's Department, on loan to the City of Bastrop, was working with a local informant. Berry, age 22, had been an active police officer for two months at the time. On December 17, 1986, Berry and the informant went to Duplissey's home at about 6:30 p.m. Duplissey was not there, but Mac Musgrove soon arrived and they talked about the drug deal. Shortly thereafter defendant drove up and the four men discussed a marijuana sale.
Officer Berry gave $25.00 to Musgrove, who left with defendant to go secure the marijuana. Berry and the informant rejoined them at Musgrove's trailer 30-40 minutes later, where they were told that the marijuana had been delayed. Two women were also present: Musgrove's wife Cindy, and defendant's then-girlfriend, Sherry Lemons.
Officer Berry and the informant returned within the hour, and Musgrove had approximately one-quarter ounce of suspected marijuana for them. Defendant was seated at a table with the two women while Musgrove, the informant and Berry stood. Musgrove took a bag of vegetable matter from his windbreaker pocket and handed it to defendant. Defendant unrolled the bag, smelled the contents, then handed it to Officer Berry.
Berry and the informant left the trailer. Berry initialed the bag and delivered it to his supervisor, Bastrop Detective Gary Freeman. Freeman transferred the bag to the Delta Crime Lab where analysis confirmed that the substance was marijuana. A little over a month later, Det. Freeman swore out a warrant for Duplissey's arrest on distribution of marijuana. A bill of *1381 information was filed on February 17th, and a preliminary examination held on March 17th.
On May 13th, jury selection began for Duplissey's two-day trial. During voir dire, it became apparent that one J.C. Smith, an elderly black man, was giving non-responsive answers to some of the questions posed. It was discovered that Smith had some hearing loss. Smith said his hearing loss would not make it difficult for him to be a juror. The state asked to have Smith excused for cause, but the court denied the motion. Smith was then accepted by both sides.
After a jury of twelve was selected (no alternates were chosen), trial began. Officer Berry testified first to the facts already related herein. His testimony at trial differed from his testimony at the preliminary examination with respect to various details. On cross-examination, the defense attorney used the transcript of the preliminary examination to point out these differences. This transcript was then introduced into evidence by the defense. Berry admitted at trial that his testimony at the preliminary examination was incorrect on certain points. He said that his testimony at trial was more accurate because he had been able to study his report. Berry's uncertainty in responding to the various questions led the prosecutor to re-direct twice and later observe in his appellate brief that it was apparent that Berry was not experienced either at working undercover or at testifying in court.
The state also called Musgrove and Detective Freeman to testify at trial. Most of Berry's basic version of the incident was corroborated by these two witnesses. Musgrove's testimony clarified certain points on which Berry was inconsistent.
The defendant presented two witnesses: Mac Musgrove's wife Cindy, and Duplissey's ex-girlfriend, Sherry Lemons. The testimony of both witnesses was similar to that of Musgrove.
After hearing the evidence, the closing arguments, and the court's legal instructions, the jury retired for deliberation at 3:15 p.m. At 4:35 p.m. the jury returned with a verdict of guilty of attempted distribution of marijuana. Defense counsel requested that the jury be polled.
The polling was done by use of checkslips. Each juror was instructed to check his verdict and sign the slip. When the checkslips were collected, it was noticed that Smith, the hard-of-hearing juror, had not checked a verdict. At that point, the tally stood at nine votes for conviction of attempted distribution of marijuana, two for acquittal, and one blank. It was then discovered that Mr. Smith could not read or write.
The trial judge, pursuant to LSA-C.Cr.P. art. 813,[1] instructed the jury to retire to the jury room and deliberate further. Defense counsel moved for a mistrial on the specific ground that a member of the jury was not qualified.[2] The trial judge deferred ruling on the motion. Meanwhile, the record reflects that the jury foreperson, Monica Lynn Williams, asked the bailiff, Al Williams, the purpose for their returning to the deliberating room and what they were supposed to do. Deputy Williams responded, "deliberate." At this time Ms. Williams explained the difficulties with Mr. Smith's being unable to read; the bailiff assured her that he would find out from the judge what should be done.
The judge's secretary would not allow Bailiff Williams to consult him, and did not inform the judge of the bailiff's request. The bailiff returned to the jury room and told the foreperson that they were to deliberate further; that Mr. Smith had to make *1382 up his mind without assistance; that the jurors should not ask him to agree with them; and that Ms. Williams could not tell him what to do.
At some point thereafter the trial judge was informed of what had occurred, and at 5:25 p.m. he called the jurors back into the courtroom. The judge ordered that all jurors be removed from the courtroom, except Monica Williams, whom he then questioned about her conversation with the bailiff. After the questioning was concluded, all jurors were returned to the courtroom for further instructions from the court, and then sent back to the jury room for further deliberation. Defense counsel was present during this time but made no objections and did not move for mistrial. At 5:45 p.m. the jury returned with a verdict of guilty of attempted distribution of marijuana. A poll of the jury revealed a vote of 11-1 in favor of the verdict. The verdict was recorded and the jury discharged.
The court subsequently denied defendant's previous motion for mistrial explaining that since only 10 votes were required to convict, and the vote was 11 to 1, the defendant suffered no prejudice from one juror's lack of qualifications. The judge stated he would have granted a mistrial had the vote been 10-2 with Mr. Smith's being the decisive "guilty" vote.
The court also pointed out that during voir dire, Mr. Smith answered affirmatively when asked whether he could read and write the English language. No other questions on these qualifications were asked. With respect to Mr. Smith's qualifications, the court stated, "Hearing was not his problem, reading was his problem." To compensate for what might have been a hearing problem, however, the trial court had at the outset instructed the bailiff to seat Mr. Smith closest to the witness stand and the counsel table.
Subsequently, defense counsel filed a motion for a new trial which was heard on August 18, 1987. Defense counsel presented two witnesses who claimed to have heard part of a conversation between the jury foreperson and the bailiff: Scott McElroy, a lawyer who attended the trial as a spectator, and Nori Eppinette, counsel's law clerk. The State called Bailiff Williams, who related what was said between himself and the juror.
The court denied the motion for new trial, deciding that the bailiff's conduct was not of "such a nature that would influence the jury in any manner."
Defense counsel perfected this appeal, citing as error the trial court's rulings on the motion for new trial and motion for mistrial.

ASSIGNMENT NO. 1
Defendant first assigns as error the trial court's ruling denying his motion for mistrial, again urged in the motion for new trial, based on the discovery during deliberations that juror Smith could not read or write.
The trial judge denied the motion for mistrial, reasoning that defendant suffered no prejudice since the verdict was 11 to 1 and Smith's vote was not necessary to convict.
LSA-C.Cr.P. art. 401 provides the general qualifications of jurors; among them is that one must "be able to read, write, and speak the English language."
Art. 775 of the Code of Criminal Procedure provides in pertinent part:
A mistrial may be ordered, and in a jury case the jury dismissed, when:
* * * * * *
(6) False statements of a juror on voir dire prevent a fair trial.
Upon motion of a defendant, a mistrial shall be ordered, and in a jury case the jury dismissed, when prejudicial conduct in or outside the courtroom makes it impossible for the defendant to obtain a fair trial, * * *.
Smith, whether inadvertently or not, made a false statement on voir dire when he responded affirmatively to the *1383 query of whether he could read and write. It is clear from C.Cr.P. art. 775 that when false statements are made by a juror on voir dire, it is discretionary with the trial judge whether or not to order a mistrial. State v. Forbes, 348 So.2d 983 (La.1977); State v. Nicholas, 312 So.2d 856 (La.1975). The appellate court will not disturb the trial judge's ruling absent a clear showing of an abuse of that discretion. State v. Forbes, supra; State v. Nicholas, supra. However, a mistrial is mandated when the conduct complained of is so prejudicial that it is impossible for the defendant to obtain a fair trial. State v. Nicholas, supra. In interpreting art. 775, our courts have clearly stated that mistrial is a drastic remedy and should be declared only when unnecessary prejudice results to the accused. On appeal the trial court's denial of a mistrial should be reversed only upon finding an abuse of discretion. State v. Smith, 430 So.2d 31 (La.1983).
In State v. Nicholas, supra the issue was juror illiteracy as grounds for mistrial. There, it was discovered during deliberations but prior to verdict that two jurors were unable to read and write. Our Supreme Court refused to reverse the trial court's refusal to grant a mistrial, finding no abuse in the trial court's ruling since the only written exhibits had been read aloud to the jurors during the trial. The court concluded that under these circumstances the jurors' inability to read and write, and their failure to declare this inability, did not prevent the defendant from obtaining a fair trial. This court followed Nicholas in State v. Murphy, 465 So.2d 811 (La.App. 2d Cir.1985), where we concluded that since the only written evidence was read aloud there was no prejudice.
In the instant case there were only three written exhibits introduced into evidence: the transcript of Officer Berry's testimony at the preliminary examination, Officer Berry's official report of the incident, and the Crime Lab's certificate attesting that the bag of alleged marijuana received by Berry from the defendant did in fact contain marijuana. Neither the certificate nor the officer's report contained information beneficial to the defendant. The defendant never questioned the fact that the substance in question was marijuana, and in fact defense counsel stipulated that it was marijuana; and Berry's report did not contradict his trial testimony, nor did the defense assert that it did. Counsel argues in brief only that the preliminary examination transcript would have impeached Officer Berry's trial testimony. Although the entire transcript was not read aloud at trial, defense counsel extensively and rigorously cross-examined Berry from it and emphasized the differences in his testimony at trial and at the preliminary examination. The inconsistencies were clearly pointed out to the jury.
We find that the trial judge did not abuse his discretion in denying a mistrial. The information in the particular written exhibit about which defendant complains was thoroughly presented orally through cross-examination at trial. Obviously, Smith could understand and speak English. Had it been otherwise this would have been apparent on voir dire. Further, as the trial judge pointed out, the jury voted 11 to 1 for the attempted distribution of marijuana verdict; Smith's vote was not necessary for conviction. Under these circumstances, defendant was not prevented from obtaining a fair trial.
This assignment of error does not merit reversal.

ASSIGNMENT NO. 2
In his second assignment of error the defendant alleges that the trial judge erred in not granting his motion for mistrial and motion for new trial when it was discovered that the bailiff had an impermissible conversation with a member of the jury during sequestration.
The jury foreperson was questioned about the incident by the judge in the presence of defense counsel. The trial judge intended to have the entire panel of jurors questioned one by one about the incident, *1384 but defense counsel expressly stated that the jury foreperson was the only one he wanted questioned. At no time did the defendant move for a mistrial or make any objection on the ground of the bailiff's improper contact with the jury.
A defendant's failure to timely move for a mistrial or request an admonition is a waiver of any error on appeal which he may have claimed under LSA-C. Cr.P. arts. 771 and 775. State v. Bolton, 408 So.2d 250 (La.1981). Since defendant did not object, move for a mistrial or request an admonition upon learning of the bailiff's improper communications with the jury, he cannot claim on appeal that he was entitled to a mistrial. His failure to make a contemporaneous objection also waives any right to raise this issue for the first time on appeal. C.Cr.P. art. 841; State v. Brown, 321 So.2d 516 (La.1975).
C.Cr.P. arts. 851(4) and 855 allow the defendant to raise an alleged error or defect in the proceedings in a motion for new trial only if it appears that, notwithstanding the exercise of reasonable diligence by the defendant, the error or defect was not discovered before the verdict. State v. Martin, 316 So.2d 740 (La.1975); State v. McCloud, 357 So.2d 1132 (La. 1978). The record in this case clearly reveals that defendant knew of the bailiff's conversation before the verdict was rendered. Defendant's knowledge of the alleged defect prior to the verdict and his failure to timely object prevents him from gambling on the verdict and raising the defect in a motion for new trial. State v. Martin, supra; State v. McCloud, supra.
Finding no merit in either of defendant's assignments of error, we affirm the conviction.
AFFIRMED.

ON APPLICATION FOR REHEARING
Before MARVIN, NORRIS, LINDSAY, HALL and SEXTON, JJ.
Rehearing denied.
NOTES
[1] Art. 813. Improper verdict; procedure

If the court finds that the verdict is incorrect in form or is not responsive to the indictment, it shall refuse to receive it, and shall remand the jury with the necessary oral instructions. In such a case the court shall read the verdict, and record the reasons for refusal.
[2] "Your Honor, at this time, due to the fact that the jury is not qualified because one of its members is not qualified, I move for a mistrial." R.p. 400.