SEXTON, Judge.
The defendant, John L. Winzer, was found guilty by jury of possession of marijuana with intent to distribute and was sentenced by the trial court as a multiple offender to serve a period of 16 years without benefit of parole, probation or suspension of sentence, and in addition to pay a fine of $5,000. The defendant was also ordered to serve an additional two years at hard labor for failure to pay the fine. The defendant appeals his conviction and sentence asserting four assignments of error. We affirm the defendant’s conviction, amend the sentence and affirm the sentence as amended.
FACTS
After a two to three year investigation, Sgt. Randall Pepper of the Louisiana State Police Narcotics Division sought and obtained a search warrant for the residence of John L. Winzer. He described observing the defendant’s house for two to three years prior to the instant search. He stated that he spent time in the woods around the defendant’s house observing the activities. The warrant was based at least in part upon information received from a confidential informant (Cl).
On October 18, 1986, a number of officers gathered in order to execute the search warrant obtained by Sgt. Pepper. The officers then went to the residence of John L. Winzer, in addition to the residence of his parents located on the same property. The officers searched the trailer house which was the residence of the defendant, the residence of Mr. and Mrs. Winzer, and also a shop which was the business of the defendant. During the execution of the warrant, the officers seized a number of items alleged to be contraband or seizable items. Trooper Don Campbell seized a package of suspected marijuana from the freezer compartment of a refrigerator. The marijuana he seized was contained in two individual bags inside of a larger bag. Trooper Henry Whitehorn found a shoebox located beside the sofa in the residence of the defendant. Contained in the shoebox were a note pad with names and figures, JOB cigarette papers, gleanings of marijuana, and a bag of marijuana. Trooper John Ballance seized a paper bag containing eight baggies of marijuana from a refrigerator located in the garage or shop.[1]
Deputy Steve Williams of the Claiborne Parish Sheriff’s Office seized $11,000 located in a dark-colored purse, along with a black pouch containing $992. Both purses were located in the defendant’s bedroom. He also seized jewelry from the same bedroom. Sgt. Randall Pepper, the officer who had obtained the search warrant, seized scales out of the defendant’s kitch *1262 en. Also seized during the search were two vehicles located in the garage area, and a number of guns seized from the defendant’s parents’ house.
The defendant was then charged with possession of marijuana with intent to distribute, in violation of LSA-R.S. 40:966.
JURY PANEL SELECTION
The defendant first assigns as error the trial court’s denial of the defendant’s motion for mistrial based upon the procedure used to obtain the panels for voir dire of prospective jurors.
LSA-C.Cr.P. Art. 784 prescribes the method for selecting the jury panels. This article provides:
Art. 784. Method of selecting panel
In selecting a panel, names shall be drawn from the petit jury venire indiscriminately and by lot in open court and in a manner to be determined by the court.
In those judicial district courts, including the Criminal District Court for the parish of Orleans, wherein use of a jury pool has been authorized by law, the petit jury panel shall be selected by random, indiscriminate choice in a manner to be determined by the rules of the court in which the jury panel is selected.
Comment (c) to this article states:
Details such as whether the jurors should be called singly or by groups of two, three, etc., are left to the court’s discretion. The court can and should regulate such matters; statewide uniformity on the subject has never existed and is not necessary.
The procedure used during this trial was that the sheriff would pull out a number of slips from an envelope which contained the names of all of those on the petit jury venire. These names which had been pulled were then called to determine who was and who was not present until six potential jurors had been called forward. The jurors were thus called forward in groups of six for voir dire until twelve jurors plus one alternate had been selected.[2] After two panels had been pulled, but before the start of voir dire on the second panel, the defendant objected to the method used to select the jurors. The defendant requested a mistrial and the trial court deferred ruling thereon until the conclusion of jury selection.[3]
At the hearing held on the defendant’s motion for mistrial, the defendant asserted that the sheriff had discriminated in choosing those individuals called into the individual jury panels. The first witness, Walter V. Kendrick, an attorney at law, testified that the sheriff would pull a handful of slips out of the jury venire envelope and fan them out in his hand. He stated that it appeared to him that the sheriff did not call the names from right to left or left to right but seemed to pick and choose which name to call from the fanned out slips. However, he testified he could not tell whether the names on the slips were face up or face down.
The defendant, John L. Winzer, testified that the sheriff seemed to be selecting the names in his hand discriminately rather than from top to bottom or vice versa. He also said that it seemed to him that the names on the slips were facing the sheriff.
Stephen Thomas Sylvester, who was assisting as counsel for the defendant, also testified. He stated that the sheriff reached in and pulled a handful of slips out of the jury envelope. The sheriff then fanned these slips out in his hand. Mr. Sylvester, however, was unable to state that the sheriff discriminately called out the names, although he said that the methodology had the potential for discrimination. He also said that he was able to see the writing on some of the slips, indicating that the names on these slips were facing the counsel table rather than the sheriff. He also did not recall that the sheriff had slips remaining in this hand after the completion of a six-person panel.
*1263 One of the defendant’s witnesses, Willie Bell, stated in describing the sheriffs actions, “He’d just reach in the envelope, got four out of the envelope put ’em in his hand and call ’em out, call their name.” Rolanda Winzer testified that she could not tell whether the sheriff was discriminating by calling out the names in a particular order.
Defense counsel, Edward Henderson, testified that he had noticed this procedure previously in Claiborne Parish and that he had been concerned about it. He conceded that he made no request for a change in procedure prior to the beginning of jury selection. He also testified that it appeared to him that the sheriff pulled several slips at a time but did not call the names either from right to left or from left to right — instead, the sheriff appeared to select from among the slips in his hand.
The record reflects that in order to obtain the first six jurors for voir dire, the sheriff called sixteen names. These names appear in order in the record one after the other and a number is listed beside each juror. This number is obviously the location of the juror on the petit jury venire list. Since fourteen names were called before six people were selected, it is also apparent that eight of those called had either been excused or were not served.
To obtain the second panel of six (immediately after which the defendant made his objection), thirteen names were called. Ten of those names (with their numbers) are shown one under another in the record. After calling one name, “Billy Hall,” the sheriff stated, “He’s excused.” Similarly, after two other names were called, the sheriff inquired if that individual was there. At the conclusion of the ten names, the sheriff inquired, “You need one more?” After the trial court responded, “Yes,” the sheriff called three additional names, the final being Henry Arant. The record reflects that Mr. Arant was the last name called to complete this voir dire group.
J.R. Oakes, the sheriff in question, testified that he pulled the names for the first two six-person voir dire panels. He stated that in the process of reaching into the envelope and obtaining several slips that some of the slips would be facing him and some would not. The sheriff conceded that on occasion if he had names left in his hand after completing the panel, the names were returned to the box for the next drawing. The sheriff denied that he discriminated in the manner in which he called the names that were in his hand. However, even though called by the defense, he was not questioned about how he determined in what order the names pulled from the envelope were to be called out.
Other than the selection being indiscriminate and by lot in open court, the procedure of jury selection from the petit jury venire is expressly left to the discretion of the trial court. State v. Bazile, 386 So.2d 349 (La.1980); State v. Hegwood, 345 So.2d 1179 (La.1977); State v. Thompson, 489 So.2d 1364 (La.App. 1st Cir.1986), writ denied, 494 So.2d 324 (La.1986).
Defendant bears the burden of establishing fraud or that some irreparable injury was caused by the selection process. State v. Brown, 414 So.2d 726 (La.1982).
In his reasons for denying the defendant’s motion for mistrial, the court stated that out of the 150 people who were subpoenaed and whose names were included in the envelope, 63 were present to be examined as potential jurors. Of these 63 people, 48 were examined. The defense used all available peremptory challenges by the “next to last selection.” The court noted that all of the witnesses who testified on the issue had an interest in the case and that several were so far away that it would be impossible for them to determine whether the slips were upside down or not. The court further noted that although counsel for the defendant was aware of the procedure the sheriff usually used, no objection was made until the conclusion of the calling of the second voir dire of six persons. The court also noted certain inconsistencies in the testimony of the witnesses. The trial court concluded that the defendant had failed to carry his burden of showing that there was discrimination in *1264 the selection of those called for voir dire examination.
We agree with the trial court that the defendant has failed to carry his burden. There is no indication that the sheriff was fraudulently managing the selection of the names or that he was proceeding in bad faith. It appears that on most occasions, all of the names that the sheriff pulled were called. While it is apparent that a veteran sheriff from what can probably be referred to as a “rural parish” would know many of those in the venire, the defense has not shown that the sheriff was exercising discretion in the order in which he called the names. This point is clearly illustrated by the fact that 29 names were called in order to obtain 12 persons for the first two voir dire panels.
While we agree that the method used has potential for abuse and that the better method of selection of potential jurors would have been to pull one name at a time from the envelope (as occurred after the defense objection in this regard), we agree that the defendant has failed to demonstrate fraud, irreparable injury or discrimination. LSA-C.Cr.P. Art. 419; State v. Brown, supra; State v. Thompson, supra.
This assignment of error is without merit.
UNQUALIFIED JUROR
The defendant’s second assignment of error concerns the defendant’s motion for a new trial based upon the discovery that one of the jurors in the trial was incompetent to serve, being illiterate and hard of hearing. In this motion the defendant asserts that he is entitled to a new trial on the basis of the discovery of the illiteracy of Mr. Timmy C. Frazier. At the hearing on this motion, the juror stated that he could neither read nor write and that he was a little hard of hearing. When asked if he understood the nature of the trial that he had participated in, the juror stated, “All I understand was having court, I understood.” When asked if he recalled how he voted during the trial, he stated, “Yeah, voted the motion. That’s all I know.” Upon further questioning, the juror stated, “Well, the motion, I said guilty. That’s the way that was. That’s the way I understood it.”
The trial judge has great discretion under LSA-C.Cr.P. Art. 775 to order a mistrial when false statements are made by juror in voir dire. State v. Forbes, 348 So.2d 983 (La.1977); State v. Nicholas, 312 So.2d 856 (La.1975); State v. Duplissey, 529 So.2d 1379 (La.App. 2d Cir.1988). The appellate court will not disturb the trial judge’s ruling absent a clear showing of an abuse of that discretion. State v. Forbes, supra; State v. Nicholas, supra. However, a mistrial is mandated when the conduct complained of is so prejudicial that it is impossible for the defendant to obtain a fair trial. State v. Nicholas, supra. Additionally, where written evidence is read aloud into the record there is no prejudice shown to the defendant when a juror is illiterate. State v. Duplissey, supra; State v. Murphy, 465 So.2d 811 (La.App. 2d Cir.1985); State v. Nicholas, supra.
In State v. Duplissey, supra, it was discovered during jury deliberations that one of the jurors could not read or write. This court reasoned that since the verdict was 11-1, the questioned juror’s vote was not necessary for conviction; therefore, the defendant had suffered no prejudice. In the case at bar, the verdict was at least 11-1 against the defendant.[4]
Additionally, although there were numerous written exhibits introduced into evidence, the pertinent portions of these exhibits were read into evidence during the trial, or were discussed thoroughly on direct and cross-examination.[5] Under these circumstances, we agree that defendant has not shown that he was so prejudiced by *1265 the inclusion of the illiterate juror that he did not obtain a fair trial. This assignment of error is without merit.
SUFFICIENCY OF EVIDENCE
The defendant argues that the evidence was insufficient to support his conviction. In reviewing the sufficiency of the evidence to support a conviction, an appellate court in Louisiana is controlled by the standard enunciated by the United States Supreme Court in Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979). The appellate court must determine that the evidence, viewed in the light most favorable to the prosecution, was sufficient to convince a rational trier of fact that all of the elements of the crime had been proved beyond a reasonable doubt.
Where, as in the instant case, there is circumstantial evidence, LSA-R.S. 15:438 does not establish a stricter standard of review than the more general reasonable juror’s reasonable doubt formula, but it emphasizes the need for careful observance of the usual standard, and provides a helpful methodology for its implementation in cases which hinge on the evaluation of circumstantial evidence. State v. Chism, 436 So.2d 464 (La.1983).
The test for determining whether intent to distribute exists in a particular case includes five factors which should be considered in evaluating the existence of intent to distribute: (1) packaging in a form usually associated with distribution, (2) evidence of other sales or attempted sales by the defendant, (3) a large amount or quantity of substance such as to create a presumption of intent to distribute, (4) an amount inconsistent with personal use, and (5) the existence of any paraphernalia. State v. House, 325 So.2d 222 (La.1975). The intent to distribute may be inferred from the surrounding circumstances. The trier of fact may look to how the substance was packaged, the quantity of the substance seized and the presence of scales or other paraphernalia for drug use or packaging. State v. Trahan, 425 So.2d 1222 (La.1983); State v. Jordan, 489 So.2d 994 (La.App. 1st Cir.1986); State v. Tasker, 448 So.2d 1311 (La.App. 1st Cir.1984), writ denied, 450 So.2d 644 (La.1984). Testimony of street value and dosage units of the narcotic is also relevant to the issue of intent. State v. Tornabene, 337 So.2d 214 (La.1976); State v. Staton, 433 So.2d 222 (La.App. 1st Cir.1983), writ denied, 438 So.2d 1112 (La.1983).
In this case, as the defendant was charged with possession of marijuana with intent to distribute, the state was charged with proving that the defendant possessed the marijuana and that the defendant had the subjective intent to distribute this marijuana. The marijuana was seized from the trailer residence of the defendant and also from the garage business of the defendant. Although the defendant contended that his employees had access to both his residence and the freezer in the garage where marijuana was found, it is apparent that the jury rejected this possibility in light of the other evidence.
The quantity of marijuana seized by the officers during the execution of the search warrant was in excess of three pounds. The marijuana was located in several areas of the searched property. A substantial sum of cash was found nearby. In at least one package the marijuana was subdivided into smaller baggies in a form consistent with packaging for sale. Furthermore, the officers seized drug paraphernalia from the defendant’s residence as well as large amounts of currency. Finally, the defendant was heard to inform two officers that the marijuana seized at the property belonged to him and that he had distributed marijuana in the past.
Considering this evidence in the light most favorable to the state, we find the evidence sufficient to maintain the defendant’s conviction for possession of marijuana with intent to distribute. This assignment of error is without merit.
EXCESSIVE SENTENCE
The defendant asserts that the sentence imposed, 16 years at hard labor as an habitual offender, along with a fine of $5,000, is excessive. It is a well-settled principle that *1266 the sentencing judge is given wide discretion in imposing a sentence within the statutory limits and such a sentence should not be set aside as excessive in the absence of a manifest abuse of discretion by the sentencing judge. State v. Square, 433 So.2d 104 (La.1983); State v. Brooks, 431 So.2d 865 (La.App. 2d Cir.1983); State v. Hammonds, 434 So.2d 452 (La.App. 2d Cir.1983), writ denied, 439 So.2d 1074 (La.1983).
The sentencing guidelines of LSA-C. Cr.P. Art. 894.1 provide the criteria to consider in determining whether a sentence is excessive. State v. Sepulvado, 367 So.2d 762 (La.1979); State v. Tully, 430 So.2d 124 (La.App. 2d Cir.1983), writ denied, 435 So.2d 438 (La.1983). While the trial judge need not articulate every aggravating and mitigating circumstance outlined in LSA-C. Cr.P. Art. 894.1, the record must reflect that he adequately considered these guidelines in particularizing the sentence to the defendant. State v. Nealy, 450 So.2d 634 (La.1984); State v. Knighton, 449 So.2d 1171 (La.App. 2d Cir.1984); State v. Smith, 433 So.2d 688 (La.1983); State v. Hammonds, supra; State v. Cunningham, 431 So.2d 854 (La.App. 2d Cir.1983), writ denied, 438 So.2d 1112 (La.1983).
A sentence is unconstitutionally excessive in violation of LSA-Const. Art. 1, § 20 if the sentence is grossly out of proportion to the severity of the offense or nothing more than a needless and purposeless imposition of pain and suffering. State v. Bonanno, 384 So.2d 355 (La.1980); State v. Cunningham, supra.
In imposing sentence upon the defendant, the trial court filed into the. record “Sentencing Guidelines” as Exhibit A. The trial court noted that the defendant’s activity in distributing drugs was very serious. It also found that the defendant was a prior felon having been convicted of manslaughter, and that the defendant showed no remorse about his crime, in fact, he denied having been involved. The court noted that the defendant was married, was 36 years old, and had two children. The court stated that the defendant is apparently in good health and intelligent. The court noted that the offense involved adversely affected the lives of other people. The court noted that the defendant’s wife was employed earning a salary of $20,000 a year and that the defendant’s business was apparently earning money. The court determined on this basis that the defendant’s incarceration would not present a hardship to his family. An examination of the trial court’s sentencing considerations filed in the record shows that the trial court found no mitigating factors.
The defendant was sentenced as an habitual offender and was subject to a mandatory term of ten years under the provisions of LSA-R.S. 15:529.1. Under the provisions of LSA-R.S. 40:966, he was also subject to a minimum five-year sentence and a maximum $15,000 fine. Thus, the defendant has received a sentence at the lower end of his potential exposure. Considering the seriousness of the offense, the amount of marijuana involved, and the defendant’s history, we cannot find this sentence excessive.
However, the trial judge additionally sentenced the defendant to two years of default time at hard labor in lieu of payment of the fine. The imposition of imprisonment at hard labor in lieu of payment of default time is not authorized. LSA-C.Cr.P. Art. 884; State v. Tyler, 544 So.2d 495 (La.App. 2d Cir.1989); State v. Mims, 524 So.2d 526 (La.App. 2d Cir.1988), writ denied, 531 So.2d 267 (La.1988). Additionally, the imposition of default time for a period exceeding one year is illegal under the provisions of LSA-C.Cr.P. Art. 884; State v. Jones, 447 So.2d 1050 (La.1984). Therefore, defendant’s sentence will be amended to delete the imposition of hard labor time in lieu of payment of his fine. It will also be amended to delete one year of the two-year sentence imposed in default of the payment of the fine.
ABANDONED ERRORS
The defendant’s assignment of error no. 3 complaining of the trial court’s failure to sustain the defendant’s motion to suppress was neither briefed nor argued. It is considered abandoned. State v. Domingue, *1267 298 So.2d 723 (La.1974); State v. Williams, 338 So.2d 672 (La.1976).
ERRORS PATENT
The defendant’s final assignment of error requests this court to consider any errors patent. A review of the record does not reveal any errors patent on the face of the record other than the default time at hard labor imposed by the trial court which was addressed under defendant’s claim of excessive sentence.
Accordingly, the defendant’s conviction is affirmed, and the sentence imposed is amended to reflect that the two-year term assessed in lieu of the payment of the fine is amended to delete the hard labor provision and one year of default time, and to reflect that the remaining one year of default time is assessed in jail in lieu of payment of the fine. As amended, the sentence is affirmed.
CONVICTION AFFIRMED, SENTENCE AMENDED, AND AS AMENDED, AFFIRMED.

. At the time of the seizure, the defendant’s employee, Don Jones, was in the garage working on a car. Don Jones was also arrested along with the defendant after this search. The officers located some suspected marijuana in Mr. Jones’ car.

. The final panel contained only four potential jurors.

. It should be noted that a slightly different method for drawing the names of the potential jurors was used to complete jury selection after the defendant’s objection.

. One juror’s response was inaudible.

. These exhibits included the following state exhibits: No. 7, evidence of transfer receipt; No. 11, receipt from North Louisiana Crime Lab; No. 10, the affidavit in support of and the search warrant; No. 12, the report from the North Louisiana Crime Lab; and No. 14, the statement of rights. These exhibits also included the defendant's exhibit Nos. 1 and 2, which were deeds to O.T. Winzer and to Montgomery Winzer on the property searched.