381 So.2d 455 (1980)
STATE of Louisiana
v.
David Paul DELORE.
No. 65503.
Supreme Court of Louisiana.
March 3, 1980.
*457 Prentiss Cox, Glynn Voisin, Houma, for defendant-appellant.
William J. Guste, Jr., Atty. Gen., Barbara Rutledge, Asst. Atty. Gen., Norval J. Rhodes, Dist. Atty., William G. Yates, Asst. Dist. Atty., for plaintiff-appellee.
WATSON, Justice.[*]
Defendant, David Paul Delore, was convicted of the first degree murder of Michael Craig Davis in violation of LSA-R.S. 14:30 and sentenced to life imprisonment without benefit of probation, parole or suspension of sentence, as recommended by the jury. On appeal to this court, defendant argues eight assignments of error.

FACTS
Mike Davis was murdered in Houma, Louisiana, on March 16, 1977. His body was discovered the following day with knife wounds in the back. There was no identification on the body other than a package of matches from the "Lion's Share" bar. During investigation at the Lion's Share, John "Frenchy" Garand, an employee, was summoned to the bar and told detectives Buquet and Authement that Davis had been in the Lion's Share the evening before with defendant Delore. Delore had been staying at Garand's apartment for two nights at the invitation of Garand's roommate, John Martinez. The detectives and Garand went to the apartment around 1:00 P.M. on the 17th, and Delore was asked to come to the sheriff's office. Delore was not told the reason for the request and was not placed under arrest. Investigation showed no prior criminal record. Chief of Detectives Aubrey Authement testified that he advised Delore of his Miranda rights immediately *458 after arrival at the sheriff's office. While Delore was at the sheriff's office, Garand gave written permission for a search of his apartment. A bloody shirt, a bloody pair of blue jeans, and a pair of boots with blood on them were found. In a garbage can at the rear of the apartment there was a face cloth, which was also seized. The items were placed in a paper bag and taken to the sheriff's office. Delore had been in an interrogation room, but not under restraint, from approximately 1:30 P.M. until the searching group arrived with the clothing around 4:20 P.M. Defendant Delore identified the pants and shirt as being his, but said the boots belonged to "John". At that time, Chief of Detectives Aubrey Authement testified that he again advised Delore of his Miranda rights and arrested him at approximately 4:27 P.M. During the course of the afternoon, Major Authement, Captain Godfrey Buquet, six other officers and Sheriff Charlton P. Rozands were present from time to time.
After identifying the clothing, defendant confessed orally to the murder and signed a waiver of rights and a confession typed by Captain Buquet.

ASSIGNMENT OF ERROR NUMBER ONE
Defendant Delore contends that the trial court erred in denying his motion to quash the indictment. Defendant argues, in essence, that there are no standards to govern whether an indictment shall be for first or second degree murder, and the choice is therefore made in an unconstitutionally arbitrary manner.
State v. Payton, 361 So.2d 866 (La.1978) held that the definitions of first and second degree murder cannot provide for the presence or absence of heinous circumstances as essential elements of the offenses. Such circumstances can constitutionally be considered only in sentencing. Since the legislature attempted in LSA-R.S. 14:30.1(B) to define first degree murder as a murder committed in a particularly cruel manner, that section of the statute was held to be invalid but severable from the remainder.
Defendant Delore was charged with a crime committed on March 16, 1977. This was prior to the effective date of Act 121 of 1977 [September 9, 1977], which amended the second degree murder statute, LSA-R.S. 14:30.1, to add the reprobated definition in section B. Since defendant's crime antedated the statutory amendment considered in Payton, that decision has no bearing on his indictment.
At the time of Delore's offense, there was a clear delineation between the definition of first degree murder, which required a specific intent to kill or inflict great bodily harm, and that of second degree murder, or felony-murder, which did not require specific intent.
This assignment of error has no merit.

ASSIGNMENT OF ERROR NUMBER TWO
Counsel contends that the trial court erred in not suppressing defendant's oral inculpatory statements and written confession, arguing that Delore's consumption of drugs and alcohol rendered him incompetent to waive his privilege against self-incrimination.
Major Authement and Captain Buquet witnessed the confession. To them, Delore appeared normal and rational. The confession refers to a three year habit of taking hard drugs. Delore, at trial, acknowledged his signature on the confession, but said he did not know what he was signing. He claimed to be "loaded" (Tr. 556) and feeling "Mellow" (Tr. 220) from injections of sodium phenobarbital at the time.
Sheriff Charlton P. Rozands testified that his short observation of Delore, lasting from five to fifteen minutes, indicated defendant was high or drunk or under some kind of influence. However, he saw defendant only briefly and stated that the investigating officers were in a better position to evaluate his condition.
Detective John Lowe said that Delore appeared normal but perhaps "a little bit apprehensive" (Tr. 309). According to detective Mike Elstner, Delore appeared in *459 control of his mental facilities. Detective Lieutenant Daniel Derouche also testified that there was nothing unusual about Delore's appearance. However, to detective Tyrone Turner, the defendant appeared "very nervous" (Tr. 329). John Garand's testimony was that Delore appeared calm and cool, although he did stutter or stammer occasionally and was sweating heavily.
Delore testified that needles, a bottle of sodium phenobarbital and other evidence of alcohol and drug use should have been in Garand's apartment, but nothing of this kind was found by the searching officers. Garand denied the presence of anything of the sort on the premises.
Delore signed a waiver of his right to counsel and his privilege against self-incrimination before confessing. The trial court weighed Delore's testimony and that of the other witnesses and decided that Delore was competent when he confessed. There is no allegation that he was threatened or intimidated. Even granting that Delore was "loaded" when he went to the sheriff's office, a degree of sobriety should have ensued during the interval before he confessed. See State v. Adams, 347 So.2d 195 (La., 1977). The testimony as a whole establishes that the State carried its burden of proving that Delore was capable of giving a free and voluntary confession. Compare State v. Coleman, 369 So.2d 1286 (La., 1979).
There is no merit to this assignment of error.

ASSIGNMENTS OF ERROR NUMBER THREE AND FOUR
Defendant contends that the last member of the jury was selected in an illegal manner which warranted a mistrial.
After twelve jurors had been selected, court adjourned for the day. A panel of potential alternate jurors was summoned for the next day. During the overnight recess, one of the jurors, Mrs. Della Perkins, became ill and was taken to her personal physician, Dr. Edgar Landry, for treatment. Dr. Landry testified that she was incapable of serving, and she was excused. Counsel for defendant contends that his motion for mistrial should have been granted at that point.
A juror who is disabled by illness is "incompetent to serve". LSA-C.Cr.P. art. 796; State v. Rounsavall, 337 So.2d 190 (La., 1976). When a juror becomes incompetent during the course of trial and no alternate is available, a mistrial may legally be ordered because "It is physically impossible to proceed ...." LSA-C.Cr.P. art. 775;[1]State v. Bennett, 341 So.2d 847 (La., 1977).
The trial court concluded that it was possible to proceed with this trial "in the ordinary course", LSA-C.Cr.P. art. 796,[2] because selection of the jury was not complete. The court had directed that a panel of alternate jurors be summoned before Mrs. Perkins became ill. LSA-C.Cr.P. art. 789.[3]
*460 Defendant relies on State v. Carmouche, 141 La. 325, 75 So. 68 (1917) and State v. Hataway, 144 La. 138, 80 So. 227 (1918). In Carmouche and Hataway, jury selection had been completed, and the indictment had been read. LSA-C.Cr.P. art. 765.[4] Those trials had gone another step in the normal order.
Absent mandatory grounds for a mistrial, it is the function of the trier of fact to determine whether a trial should continue. Any error in that decision is reversible only when denial of a mistrial results in substantial prejudice to the defendant. State v. Sepulvado, 359 So.2d 137 (La., 1978); State v. Overton, 337 So.2d 1058 (La., 1976).
Counsel for defendant contends that his defense strategy was hampered by the trial court's ruling because his twelve peremptory challenges had been exhausted. The court minutes reflect that there was one remaining challenge. The trial court granted the defense two additional peremptory challenges to be used for selection of the twelfth juror and two to be used in selection of the two alternates. The defense used three peremptory challenges in the process of selecting the twelfth juror and the two alternates. The defendant's rights were fully protected. No prejudice is discernable.
These assignments of error lack merit.

ASSIGNMENT OF ERROR NUMBER FIVE
Defendant contends that the trial court should have granted its motion for a new trial because of a personal friendship between juror Helen Chatelain and state witness Aubrey Authement. It is admitted that Mrs. Chatelain did not make any false statements on voir dire, but it is alleged that she misled the defense by failing to reveal her friendship with Major Authement. The evidence does not establish a close relationship between the two. At the hearing on the motion for a new trial, Mrs. Chatelain testified that if she had known him "real personally" (Tr. 115), she would have said so on voir dire. The testimony was that the two had met only a few times at the home of mutual friends. The acquaintance between the witness and the juror was not a valid ground for mistrial. State v. Calloway, 343 So.2d 694 (La., 1977).
This assignment of error lacks merit.

ASSIGNMENT OF ERROR NUMBER SIX
Defendant claims that the trial court should have granted a new trial because *461 of a prejudicial communication to members of the jury by a bailiff on the second day of trial. The only evidence supporting this allegation is the testimony of Della Perkins, the excused juror. She stated that she heard a second-hand comment among the group selected and sequestered for jury duty to the effect that defendant had confessed because he had been put under pressure. Ms. Perkins was vague about the origin of the remark, but indicated that it must have been brought into the jury room by an outsider. Her testimony does not establish that the remark was made by the bailiff. LSA-C.Cr.P. art. 851 states that:
"The motion for a new trial is based on the supposition that injustice has been done the defendant, and, unless such is shown to have been the case the motion shall be denied, no matter upon what allegation it is grounded."
The uncorroborated testimony of Ms. Perkins does not establish any injustice or prejudice to the defendant.
This assignment of error is without merit.

ASSIGNMENT OF ERROR NUMBER SEVEN
Defendant contends that a new trial was mandated because of a communication by Ms. Perkins to her roommate, Aleta Bogen, regarding the confession. Ms. Perkins denied a conversation with Ms. Bogen about the confession. Ms. Bogen testified that Ms. Perkins returned from her visit to Dr. Landry and told Ms. Bogen that the defendant's confession would be put into evidence. The information was said to come from a former secretary of defense attorney Cox. Ms. Perkins admitted working with an ex-employee of Mr. Cox, Diane Babalaenti, but denied receiving any information from her about a confession. Ms. Bogen said she had the impression from what Ms. Perkins said that the defense would try to "con" (Tr. 83) the jury into the false belief that the confession was coerced.
Ms. Bogen's testimony is sincere and convincing to the effect that she was uncomfortable about the knowledge; disregarded the confession in her deliberation; and, gave defendant the benefit of her discomfort about the prior communication. Her testimony was confirmed by Ms. Chatelain, who said that Ms. Bogen refused to consider the confession and maintained that defendant was not guilty until convinced to the contrary by other evidence. A second juror, Ms. Elda Hurley, replaced Ms. Perkins as Ms. Bogen's roommate. Her knowledge of the matter occurred after the confession was introduced into evidence. At that time, Ms. Bogen told her she had had previous information about the confession. When asked if it would affect her decision, she said she was going to try and ignore it.
State v. Wisham, 371 So.2d 1151 (La., 1979) involved a situation where two jurors who actually served saw defendant's alibi witness arrested for perjury. The spectacle involved an overt act by third persons which was discussed by the jury as a whole. LSA-R.S. 15:470[5] was held not to prohibit juror testimony about outside influences and communications. Here, only Ms. Perkins may have received such a communication, and she did not serve on the jury. The only other person who could have been influenced by the information was Ms. Bogen. The testimony of Ms. Bogen, Ms. Hurley and Ms. Chatelain outweighs the presumption of prejudice. While these three could not testify to impeach their verdict, they were competent witnesses to rebut an attack on the jury's conduct. LSA-R.S. 15:470.
This assignment of error is without merit.

ASSIGNMENT OF ERROR NUMBER EIGHT
This assignment of error relates to a communication by bailiff Roy Crochet to *462 the jury after the verdict, but before sentencing. Crochet was quoted as telling the jury that they had picked the wrong man because the clothes which were introduced into evidence would not have fit him at the time he was arrested. The twelve jurors stayed up most of that night discussing the matter, and Ms. Bogen then told the other jurors about her prior knowledge of the confession. The trial court concluded that the presumption of prejudice from Crochet's remark was overcome by the testimony of the jurors about its content. Delore had already been found guilty. The trial court thought that the statement "may have saved defendant's life". (Tr. 165) Since the only other option of the jury at that point was a death penalty, the remark must have helped rather than hurt. There was no prejudice. Compare State v. Marchand, 362 So.2d 1090 (La., 1978) which dealt with a prejudicial communication from the bailiff to the jury prior to verdict.
This assignment of error is without merit.
For the foregoing reasons, the verdict and sentence are affirmed.
AFFIRMED.
NOTES
[*] Chief Judge Paul B. Landry, Jr., participated in this decision as Associate Justice ad hoc, in place of Summers, C. J.
[1] LSA-C.Cr.P. art. 775:

"A mistrial may be ordered, and in a jury case the jury dismissed, when:
"(1) The defendant consents thereto;
"(2) The jury is unable to agree upon a verdict;
"(3) There is a legal defect in the proceedings which would make any judgment entered upon a verdict reversible as a matter of law;
"(4) The court finds that the defendant does not have the mental capacity to proceed;
"(5) It is physically impossible to proceed with the trial in conformity with law; or
"(6) False statements of a juror on voir dire prevent a fair trial.
"Upon motion of a defendant, a mistrial shall be ordered, and in a jury case the jury dismissed, when prejudicial conduct in or outside the courtroom makes it impossible for the defendant to obtain a fair trial, or when authorized by Article 770 or 771.
"A mistrial shall be ordered, and in a jury case the jury dismissed, when the state and the defendant jointly move for a mistrial."
[2] LSA-C.Cr.P. art. 796:

"If it is discovered after a juror has been accepted and sworn, that he is incompetent to serve, the court may, at any time before the first witness is sworn, order the juror removed and the panel completed in the ordinary course."
[3] LSA-C.Cr.P. art. 789:

"The court may direct that one or two jurors in addition to the regular panel be called and impaneled to sit as alternate jurors. Alternate jurors, in the order in which they are called, shall replace jurors who become unable to perform or disqualified from performing their duties prior to the time the jury retires to consider its verdict. Alternate jurors shall be drawn in the same manner, shall have the same qualifications, shall be subject to the same examination and challenges for cause, shall take the same oath, and shall have the same functions, powers, facilities, and privileges as the principal jurors. The regular peremptory challenges allowed by law shall not be used against the alternate jurors. The court shall determine how many additional peremptory challenges shall be allowed, and each defendant shall have an equal number of such challenges. The state shall have as many peremptory challenges as the defense. The additional peremptory challenges may be used only against alternate jurors. An alternate juror who does not replace a principal juror shall be discharged when the jury retires to consider its verdict."
[4] LSA-C.Cr.P. art. 765:

"The normal order of trial shall be as follows:
"(1) The selection and swearing of the jury;
"(2) The reading of the indictment;
"(3) The reading of the defendant's plea on arraignment;
"(4) The opening statements of the state and of the defendant;
"(5) The presentation of the evidence of the state, and of the defendant, and of the state in rebuttal. The court in its discretion may permit the introduction of additional evidence prior to argument;
"(6) The argument of the state, the defendant, and the state in rebuttal;
"(7) The court's charge;
"(8) The announcement of the verdict or mistrial in jury cases, or of the judgment in nonjury cases; and
"(9) The discharge of the jury in jury cases.
"When there is more than one defendant, the court shall determine the order of trial as between them.
"A defendant may waive his opening statement."
[5] LSA-R.S. 15:470:

"No juror, grand or petit, is competent to testify to his own or his fellows' misconduct, or to give evidence to explain, qualify or impeach any indictment or any verdict found by the body of which he is or was a member; but every juror, grand or petit, is a competent witness to rebut any attack upon the regularity of the conduct or of the findings of the body of which he is or was a member."