550 So.2d 590 (1989)
STATE of Louisiana
v.
Troy B. DUPLISSEY.
No. 88-K-2515.
Supreme Court of Louisiana.
October 23, 1989.
Jerry Jones, Jones & Johnson, Monroe, for applicant.
William J. Guste, Jr., Atty. Gen., James Norris, Jr., Dist. Atty., John Spires, Bob Noel, Asst. Dist. Attys., for respondent.
LEMMON, Justice.
The principal issue in this case is whether defendant's conviction must be reversed and a new trial ordered because the bailiff during jury deliberations communicated with the jurors about the matter pending before the court.
Defendant and Mac Musgrove were charged with distribution of marijuana. Musgrove pleaded guilty and appeared as a state witness at defendant's trial, testifying that he handed a bag of marijuana to defendant who sniffed it and handed it to an undercover agent. The agent verified Musgrove's account. Defense witnesses testified that defendant did not handle the baggie.
After deliberating for one hour and twenty minutes, the jury returned a verdict of guilty of attempted distribution of marijuana. Defense counsel requested a polling of the jurors. The judge instructed each juror to check yes on the ballot sheet if he had voted for the announced verdict or to check no and sign the ballot if he had voted for any of the other verdicts on the verdict sheet. The tally showed nine votes for guilty of attempted distribution of marijuana, two for other verdicts, and one *591 blank ballot. The judge questioned the jurors, and one indicated that he could not write.
The judge then conducted a colloquy with Juror Smith as follows:
THE COURT: Mr. J.C. Smith did not check a blank on his. Mr. Smith, on your, on your ballot there, if your verdict was guilty of attempted possession of marijuana, you need to check yes, if your verdict was any of the other verdicts, you need to check no, Mr. Smith.
DY. CLERK: Judge, he says he cannot write.
THE COURT: You cannot write or cannot read or what?
MR. SMITH: Yes sir.
THE COURT: Mr. Smith, you cannot read the words on that piece of paper?
MR. SMITH: INAUDIBLE
THE COURT: Can you read that sentence there, Mr. Smith?
MR. SMITH: Sir?
THE COURT: Can you read thatthose that says is this your verdict, can you read that?
MR. SMITH: On this here?
THE COURT: Can you read that line?
MR. SMITH: That's uh M A S
THE COURT: Excuse me. Do you know what this says here, can you read that sentence right there? Can you read anything, can you read some things?
MR. SMITH: INAUDIBLE.
THE COURT: Let me see counsel for a moment. Mr. Smith, do you know what verdict you voted for.
MR. SMITH: Sir?
THE COURT: Do you know what verdict that you voted for?
MR. SMITH: I sure don't. Oh, I vote, I vote yes.
THE COURT: You voted for what verdict? Do you remember what verdict you voted for? I gave you five (5) verdicts. I gave you guily (sic), guilty of attempted distribution of marijuana, guilty of possession of marijuana, guilty of attempted possession of marijuana, and not guilty. Do you remember those five verdicts being read to you? Remember me telling you those while you were in here?
MR. SMITH: Yes sir.
THE COURT: Do you remember which of those you voted for?
MR. SMITH: I voted yes.
THE COURT: Well there was five, one is guilty, one is guilty of attempted distribution of marijuana, one is guilty of possession of marijuana, one is guilty of attempted possession of marijuana, and one is not guilty.
MR. SMITH: I voted for guilty.
THE COURT: You voted for guilty.
MR. SMITH: Yes sir.
After the colloquy the judge instructed the jury to retire for further deliberation because there were not sufficient votes for the announced verdict.[1] Defense counsel moved for a mistrial on the ground that a member of the jury was not qualified. The judge deferred ruling on the motion until the jury returned from its deliberations. It was during these further deliberations that the questioned communications occurred.
Forty minutes later the judge returned the jurors to the courtroom. He first clarified his instructions, stating that they had been sent back for further deliberations because it takes at least ten votes for the same verdict in order for that verdict to be rendered. The judge then removed all jurors from the courtroom except the foreperson.
Referring to another situation that had arisen after the jurors were polled and returned for further deliberation, the judge asked the foreperson whether anyone, including the attorneys, witnesses, bailiff or spectators, had any communication with her in the hall or in the jury room about what the jurors were to do in this case. She answered negatively. The judge then asked her whether anyone had told her that *592 they had to render a decision or had to get an individual juror to vote for a particular verdict, and she again answered negatively. She also denied she had any conversation with the bailiff. When defense counsel inquired if she had asked the bailiff a question, the foreperson responded that she had asked about two of the verdicts on the list when they first left the courtroom, but the bailiff had told her that he could not answer that question and that the jury would have to return to the courtroom for further instructions. The foreperson further stated that she had asked the bailiff after the polling why they were returning to the jury room, and he told her they were returning "for more deliberation".
The judge then called all of the jurors into the courtroom and told them to "discuss, debate, and deliberate the case and when ten of you have agreed on the same verdict to notify the bailiff".
About two hours after the original polling the jury returned with an eleven to one verdict of guilty of attempted distribution of marijuana. After discharging the jury, the judge denied defendant's pending motion for mistrial, explaining that since there were more than ten votes for the verdict, defendant had suffered no prejudice from Juror Smith's possible lack of qualifications.[2]
Defense counsel filed a timely motion for a new trial, alleging that Juror Smith lacked the qualifications to serve on the jury and that the bailiff had told the foreperson she would have to show Juror Smith what to do. At the hearing on the motion two witnesses testified they had heard the bailiff tell the foreperson in the hall outside the jury room she would "have to show him what his verdict is".
The bailiff testified that the foreperson opened the door to the jury room during deliberation after the polling and asked him what they were supposed to do. When he replied that the jury was supposed to deliberate, the foreperson stated that one juror did not know how to read and that the jurors had already deliberated and could not "come up with anything". He then went to the judge's office, but the judge's secretary refused to allow him to speak with the judge and did not inform the judge of the bailiff's request. The bailiff returned to the jury room, went inside, and told the jurors that they were to deliberate. When the foreperson asked if they could simply get the problem juror to agree with them, he told her, "you can't ask him to agree with you, but you have to deliberate and he has to make up his own mind about how he wants to vote". He further stated that he told the foreperson they could not tell the juror how to vote and that "this man makes up his mind by himself".
The trial judge denied the new trial motion, concluding that the contact between the bailiff and the jury was not of "such a nature that would influence the jury in any manner".
The court of appeal affirmed. 529 So.2d 1379 (La.App. 2d Cir.1988). As to the improper conduct by the bailiff, the court noted that the record clearly established defendant knew of the bailiff's conversation before the verdict was rendered, but failed to object or move for a mistrial. The court therefore ruled that the lack of a contemporaneous objection precluded defendant's raising the issue on appeal.[3]
While defense counsel knew of some conversation between the bailiff and the foreperson prior to the verdict, he apparently did not discover until after trial that the extent and circumstances of the conversation were more significant than the foreperson revealed in her testimony. Moreover, when the judge asked defense counsel immediately after the verdict if he *593 had any other objections for the record, counsel replied that he would state the objection in a motion for new trial.
The defense generally cannot avail itself of an error which was not objected to at the time of occurrence. La.C.Cr.P. art. 841. One purpose of the contemporaneous objection rule is to require counsel to call an error to the judge's attention at a time when the judge may correct the error. The rule also prevents defense counsel from "sitting on" an error and gambling unsuccessfully on the verdict, and later basing an appeal on an error which might have been corrected at trial. State v. Arvie, 505 So.2d 44 (La.1987).
Here, the trial judge knew as much as defense counsel did about the contact between the bailiff and the jury, and defense counsel had no further information to disclose to the judge at the time. This was not a situation in which defense counsel refrained from moving for a mistrial, gambled on the verdict, and then raised his first complaint about the known objection after trial. The court of appeal erred in refusing to consider the assignment of error based on the absence of a contemporaneous objection.
As to the merits of the assignment of error, jurors should not be exposed to information or influences which might tend to affect their ability to render an impartial verdict on the evidence presented in court. See III Standards for Criminal Justice § 15-3.7 (2d ed. 1980). A frequent source of extraneous information or influence is a communication between a court official and a juror. An unauthorized communication to the jury by a court official in a criminal case requires reversal of the conviction if the communication was prejudicial to the accused. State v. Marchand, 362 So.2d 1090 (La.1978). An unauthorized communication between a court official and a juror during jury deliberation is presumed to be prejudicial when it was about the matter pending before the court. State v. Graham, 422 So.2d 123 (La.1982); Annotation, Communications between Court Officials or Attendants and Jurors in Criminal Trial as Ground for Mistrial or ReversalPost-Parker Cases, 35 ALR 4th 890, § 3 (1985); Annotation, Prejudicial Effect, in Criminal Case, of Communication between Court Officials or Attendants and Jurors, 41 ALR 2nd 227 (1955).
In Parker v. Gladden, 385 U.S. 363, 87 S.Ct. 468, 17 L.Ed.2d 420 (1966), a bailiff told members of a jury that the defendant was guilty and that the Supreme Court would correct them if they made a mistake in finding the defendant guilty. The Court held that the bailiff had in essence become a witness against the defendant in violation of defendant's constitutional rights to be tried "by an impartial jury [and] be confronted with the witnesses against him". The Court observed that this type of communication between the bailiff and the jury "involves such a probability that prejudice will result that it is deemed inherently lacking in due process". Id. 385 U.S. at 365, 87 S.Ct. at 471.
In State v. Marchand, 362 So.2d 1090 (La.1978), a jury which had been deliberating for five hours was told by the bailiff that defense counsel was responsible for preventing them from obtaining access to the defendant's confession. The jury returned a guilty verdict fifteen minutes later. This court held that the improper communication was clearly prejudicial to the defendant and presumptively influential on the verdict.
In State v. Sinegal, 393 So.2d 684 (La. 1981), the jury referred to an old law book in the jury room. The book contained a statement regarding intoxication as a defense to a specific intent crime, and the statement was incorrect under the current law. Noting that reversal would be required if the statement in the law book had been given as an instruction by the judge, the court concluded that no lesser standard should be applied because the jury had ferreted out this information. Because there was "more than a possibility of prejudice", this court reversed the conviction. 393 So.2d at 687.
Prejudice was also found in State v. Copeland, 419 So.2d 899 (La.1982), when the bailiffs engaged in social programs with the jurors, including presenting each *594 juror with handcuff stickpins. This court opined that "[s]uch gift giving has no place in the conduct of a serious criminal case such as this [capital murder trial] and quite likely did constitute a subtle influence, pro state, the full extent of which is impossible to ascertain". Id. at 904. The decision noted that the situation was one "in which the jurors were subjected to an influence through actions of the attending deputy-bailiffs which might have caused their verdict to be based upon something other than the evidence presented at trial". Id. at 904. The bailiffs' actions were found to be of sufficient prejudice to the defendant so as to warrant reversal of his conviction.
This court has refused to reverse convictions when the defendant was not prejudiced by the unauthorized communication. In State v. Delore, 381 So.2d 455 (La.1980), there was a conversation between a bailiff and the jury in a first degree murder trial after the guilt phase, but before the sentencing phase. The bailiff told the jurors that they had picked the wrong man because the clothes that were introduced into evidence would not have fit the defendant at the time of his arrest. The jurors testified that they stayed up most of that night discussing the conversation with the bailiff as well as one juror's prior knowledge of the defendant's confession.[4] The trial court concluded that the presumption of prejudice from the bailiff's remark was overcome by the testimony of the jurors about its content. The defendant had already been found guilty, and the trial court noted that the bailiff's statement may have spared the defendant from the electric chair. This court concluded that "[s]ince the only other option of the jury at that point was a death penalty, the remark must have helped rather than hurt". Id. at 462.
In State v. Graham, 422 So.2d 123 (La. 1982), the bailiff told a juror that the judge would decide how long the jury would deliberate and that it could be anywhere from five minutes to five days. The court noted that there was no presumption of prejudice because the communication was not about the case itself, and the defendant thus had the burden of proving that the incident was prejudicial. The trial judge had apprised the jurors during voir dire that the trial would be an extended one and questioned them fully on how a lengthy trial would affect their personal situations. The impact of the remark was also lessened by the fact that it occurred several days before deliberations began and that the remark was "not totally inaccurate, since the deliberation time of the jury would have fallen within the range given". Id. at 134. The court called the communication was harmless under the circumstances.
In State v. Palrean, 395 So.2d 687 (La. 1981), a juror, after all deliberations had been completed, knocked on the door and requested information from the minute clerk as to how to complete the verdict form for each of the two defendants. Noting that the minute clerk "did not tell the juror anything other than the mechanics of writing the verdict (which the jury had already reached) on the paper", this court held that the communication was not prejudicial to the defendants. 395 So.2d at 688. The decision emphasized that the verdict had been agreed upon prior to the communication and the communication could not have influenced the verdict.
The communication in the present case concerned the matter pending before the court, and prejudice is therefore presumed. State v. Graham, supra. This presumption of prejudice, combined with the testimony of two witnesses that the bailiff told the foreperson that the jurors were to show Juror Smith how to vote and the admission of the bailiff that he entered the jury room, was not overcome by the bailiff's testimony that he merely told the foreperson that Juror Smith had to make up his own mind about how to vote.
*595 Moreover, the communication in this case was not the type which was unlikely to result in prejudice. Conversations concerning the mechanics of deliberating on a verdict, especially those without authority of the court or knowledge of counsel, are likely to undermine the integrity of the deliberation process. In this case the foreperson initiated the conversation with the bailiff because of frustration over Juror Smith's inability to read or write, indicating that the jurors had deliberated extensively and could not "come up with anything". The jurors evidently had difficulty either in convincing Juror Smith to agree with the announced responsive verdict or in devising a method for him to express an agreement with that verdict if the judge required another written poll. The jurors may also have been confused at the time by the judge's comment on the necessity for a unanimous vote. After the jurors were taken back into the courtroom for additional instruction, the foreperson in answering the judge's questions about contact with the bailiff withheld information that the jurors were considering telling Juror Smith what to do.[5] Two witnesses also testified that they heard the bailiff tell the foreperson to show Juror Smith how to vote, and this instruction may have been given after the bailiff announced he was going to see the judge to find out what to do.
Under the circumstances we conclude that the prosecution failed to prove the bailiff's improper entry into the jury room and unauthorized communication with the jurors about the matter pending before the court, combined with one juror's inability to read and write, were not prejudicial.
Accordingly, the conviction and sentence are reversed, and the case is remanded to the district court for a new trial.
CALOGERO, J., concurs and assigns reasons.
CALOGERO, Justice, concurring.
I agree with the majority opinion that the prosecution failed to overcome the presumption of prejudice attached to the bailiff's unauthorized entry into the jury room while the jury was sequestered and his communications with the foreperson and jury in this case. ("Show him what the verdict is;" "You can't ask him to agree with you, but you have to deliberate and he has to make up his own mind about how he wants to vote.") I am prompted to so conclude, however, by the occurrence of these particular communications in the situation in which the problem juror not only was unable to read or write but also had a hearing deficit. But for the unqualified juror problem, I am not sure that these communications standing alone would have been comparable to the cases cited by the majority.
NOTES
[1] The judge actually stated that further deliberation was not necessary because the verdict was not unanimous. This was inadvertent error because only ten votes were needed for a verdict, and there were only nine votes at the time for the announced verdict.
[2] When the judge denied the motion for mistrial, he noted that he was satisfied with Juror Smith's affirmative response to the judge's inquiry whether he could read and write the English language. The judge further stated that he would have granted a mistrial if there had not been ten other votes for the final verdict.
[3] The court of appeal also rejected defendant's contention that the trial court erred in denying the motion for mistrial based on the juror's inability to read and write. Because we reverse the conviction on other grounds, we do not reach this issue.
[4] Generally, evidence should not be admitted to show the effect of any statement or conduct upon the minds of a juror. III Standards for Criminal Justice § 15-4.7 (2d ed. 1980). A juror is thus usually not allowed to impeach his verdict. However, the Court in Parker v. Gladden, 385 U.S. 363, 87 S.Ct. 468, 17 L.Ed.2d 420 (1966), recognized that remarks prejudicial to a criminal defendant, made by a bailiff to some jurors, violates the constitutional right to confrontation and overrides the traditional non-impeachment rule.
[5] There is other possible prejudice in that one juror who had originally voted no on the announced verdict changed his vote, perhaps on the basis of frustration rather than on the basis of proper deliberation on the evidence presented at trial.