483 So.2d 1200 (1986)
STATE of Louisiana
v.
Adolph HICKS.
No. KA1386.
Court of Appeal of Louisiana, Fourth Circuit.
February 14, 1986.
Writ Denied May 12, 1986.
William J. Guste, Jr., Atty. Gen., Barbara B. Rutledge, Asst. Atty. Gen., Harry F. Connick, Dist. Atty., Beryl M. McSmith, Julia S. Coley, Timothy M. Warner, Asst. Dist. Attys., New Orleans, for State.
Dwight Doskey, Clyde Merritt, New Orleans, for defendant.
*1201 Before SCHOTT, BARRY and KLEES, JJ.
SCHOTT, Judge.
Defendant was indicted by a grand jury for second degree murder in violation of LSA-R.S. 14:30.1. After pleading not guilty and not guilty by reason of insanity, he was convicted as charged, and was duly sentenced to life at hard labor.
We have examined the record for errors patent and find none.
On September 9, 1981 defendant went to the home of victim, Sheila Price. They had been lovers and had a son who was in the apartment at the time. Also present were Sheila's sister, Gail, and her son, Kevin. Defendant asked Gail to leave the living room with the children so that he could have a private conversation with Sheila, and Gail complied. Shortly afterwards Gail heard loud talking and Sheila shouting that defendant had a gun. Gail ran to the living room where defendant was holding a gun on Sheila. Gail convinced defendant to give the gun to her, and she placed it in a kitchen cabinet. A short time later defendant got the gun back, put it in his waistband, and announced he was leaving. However, he picked up his son, and this provoked further argument with Sheila and a scuffle between her and defendant. By this time defendant was again holding the gun, and Gail hit him on the head with a flower pot. Defendant shot Sheila once in the back and then four more times in the back as she lay upon the floor. Defendant left the apartment, drove to the lakefront, and jumped into the lake. Shortly afterwards, he turned himself into the police.
Defendant produced a number of his family members who testified that he had been extremely depressed for some time prior to the shooting. Defendant testified that on the day of the shooting he was going to commit suicide and went to Sheila's to say goodbye to her and their son. He claimed the gun went off accidentally when he was hit with the flower pot, he blacked out, and he later found himself parked at the lake. He thought of playing Russian Roulette with the gun and the remaining bullet and thought the bullet wouldn't go off on the first pull of the trigger. For this reason he held the gun away from himself and pulled the trigger, but to his chagrin, the last shot fired. He jumped in the lake to drown himself, could not, swam back and got out, tried to slash his wrist with a rock, but could not. He decided to surrender to the police.
Officer Bradford testified that he was on duty at the police station when defendant came in and said he had shot his girlfriend. Bradford stated defendant was distraught and about to cry, was soaking wet, and told Bradford he had thrown the gun away. Defendant was taken to police headquarters where Officer Dema was present. Dema stated that defendant's wrists did not appear to be injured in any way.
Defendant produced two psychiatrists, Drs. Kenneth Ritter and Aris Cox, who examined him in November, 1982, fourteen months after the killing. Both related defendant's severe depression prior to the killing, and Ritter stated unequivocally that defendant was unable to distinguish right from wrong at the time. Cox, however, equivocated on this question and never definitively stated defendant was insane at the time of the offense. He would say only that defendant was psychotically depressed. Both of these psychiatrists acknowledged that an examination made at the time of or shortly after the killing would have enabled a psychiatrist to make a more reliable assessment of defendant's sanity at the time of the offense.
The state called Dr. Ignacio Medina, a physician, not a psychiatrist, but an expert in forensic psychiatry, and Dr. William A. Super, a psychiatrist. Dr. Medina examined defendant in November, 1982, and concluded defendant was able to distinguish right from wrong at the time of the offense. Dr. Super examined defendant six days after the killing and further examined him on twelve occasions by the time of the trial. He stated without equivocation that defendant, while depressed, was able to *1202 distinguish right from wrongwas not insaneat the time of the offense.

ASSIGNMENT OF ERROR 1
By this assignment defendant contends the court erred in denying his motion for a mistrial after an investigating officer testified he gave defendant the Miranda warning and defendant told him he did not wish to make a statement but wanted to consult with an attorney. Defendant asserts the question by the prosecutor which elicited this reply was equivalent to a comment on defendant's invocation of his Fifth Amendment rights and constituted reversible error as in Doyle v. Ohio, 426 U.S. 610, 96 S.Ct. 2240, 49 L.Ed.2d 91 (1976). The trial court properly denied defendant's motion for mistrial, even though it was error for the prosecutor to comment in this fashion on defendant's exercise of his right against self-incrimination. State v. Smith, 336 So.2d 867 (La.1976). However, as in the cited case the error was harmless. The evidence of defendant's guilt was overwhelming and would have produced a guilty verdict irrespective of the officer's testimony. The only real issue in the trial, that of defendant's sanity, was not affected by this improper question.

ASSIGNMENT OF ERROR 2
The testimony of Officer Bradford was in the form of his testimony at defendant's previous trial which had ended in a mistrial. When Bradford was called by the state to testify it was determined that he had suffered an apparent heart attack that morning and was in the hospital at the time. By this assignment defendant argues that Bradford's testimony should have been excluded.
Under certain conditions, including the witness's illness, his testimony at the preliminary hearing may be introduced at the trial. C.Cr.P. Art. 295 B. This article is likewise applicable to testimony at a previous trial. State v. Egena, 369 So.2d 1295 (La.1979). In State v. Citizen, 431 So.2d 1051 (La.1983) the court set five conditions on the use of such testimony in order to safeguard the defendant's constitutional rights to confrontation and cross examination. These conditions were all met in this case. However, defendant contends the present case fails to meet the similarity of issues test for the use of previous testimony recognized in State v. Sylvester, 343 So.2d 1020 (La.1977). Defendant maintains that the present trial was dissimilar because he pled not guilty by reason of insanity, whereas in the first trial he pled not guilty. However, Bradford's testimony concerned defendant's appearance and condition when he turned himself in to the police. It would not change because of the insanity plea at the second trial. Issues arising out of his testimony were at least similar if not identical.

ASSIGNMENT OF ERROR 3
By this assignment defendant contends the court committed reversible error in refusing to give to the jury his requested charge on the consequences of a verdict of not guilty by reason of insanity. We have concluded that the instruction given by the trial judge on this subject was an accurate and complete discourse on the law, and it substantially included everything contained in defendant's proposed charge.

ASSIGNMENT OF ERROR 4
Near the end of the prosecutor's closing, rebuttal argument to the jury he said the following:
"the defense lawyer himself said `not guilty is an inappropriate verdict.' He said, `There's no evidence before you that you should return a verdict of not guilty,' and the state wholeheartedly agrees with that. But, let me proceed to tell you why I think a verdict of not guilty by reason of insanity is the equivalent of a verdict of not guilty. Mr. Merritt: Your honor, if he is attempting to argue, we would object to this.
The Court: I would overrule any objection at this time.
Mr. Merritt: Note an exception.
The Court: Exception noted.

*1203 By Mr. DeGabrielle: This man himself, the defense lawyer, in his argument to you which I have not rebutted explained to you the consequences of not guilty by reason of insanity. He said that this man would be remanded to the forensic facility at Jackson, Louisiana. At a time subsequent to that appointment or placement, at least within six months thereafter, this Court would have to make a finding as to this man's current sanity and whether or not ultimately he is a menace to himself and/or others. I submit to you, as mentioned before, the presumption of sanity and the fact that sanity exists by the very fact that this man is before you right now. Now, I hope you all agree that he is sane right now because there has been a finding to that effect. Do you think that in six months because he was found not guilty by reason of insanity by a jury that that's going to change anything that's happened heretofore? This man will be released if he's sane and if he's not a menace to himself or others. That's the same thing as saying not guilty. This man is sane now. Is he going to get worse in the next six months. I think not. So, if you're going to go as far as saying not guilty by reason of insanity, just go ahead and say not guilty."
Defendant argues the court committed reversible error in refusing to declare a mistrial in the face of these improper remarks.
Closing argument must be confined to the evidence, or lack thereof, conclusions of fact and applicable law, and it may not appeal to prejudice. C.Cr.P. Art. 774. The questioned remarks were beyond the confines of the article's limitations and were designed to intimidate the jury into coming back with a guilty plea. The remarks were improper, unnecessary, and out of order. It is unfortunate that the prosecutor would jeopardize the integrity of this lengthy trial by uttering these careless and inflamatory words at a point when the trial was almost over. Nevertheless, such argument does not require a reversal unless the appellate court is thoroughly convinced that the jury was influenced by the remarks and that they contributed to the verdict; and in the court's review of such a charge by defendant credit should be accorded to the good sense and fair-mindedness of the jurors who heard the evidence. State v. Jarman, 445 So.2d 1184 (La.1984).
From a painstaking review of the evidence before this jury, including defendant's demeanor and attitude immediately before he killed the victim, his own testimony as to his thoughts and actions just before he "blacked out" and his testimony concerning his conduct following the killing we are not thoroughly convinced that the jury was influenced by the improper remarks in rejecting his plea of insanity. Furthermore, defendant's medical evidence of insanity was weak and unconvincing to start and was destroyed by the testimony of the state's psychiatrist, Dr. Super, who alone among the four experts, examined defendant shortly after he was allegedly insane.
Finally this assignment overlooks that the judge had the last word in which he correctly instructed the jury on the law including burden of proof, the seriousness and importance of the jury's function in weighing the evidence, and the lack of evidentiary weight to be given to remarks of counsel. Defendant has not questioned the court's instruction except in the one respect mentioned under Assignment 3 which has no merit. To set aside this conviction in the light of these factors would hardly accord good sense and fair mindedness to these jurors.

ASSIGNMENT OF ERROR 5
By this assignment defendant questions the sufficiency of the evidence to support the element of specific intent required for a second degree murder conviction. He argues that the evidence supports the lesser included offense of manslaughter at worst. In considering this argument we view the evidence in the light most favorable to the prosecution and determine whether any rational trier of fact could *1204 have found that defendant had the specific intent to kill Sheila beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); State v. Fuller, 414 So.2d 306 (La.1982). The evidence most favorable to the prosecution in this instance is that of Sheila's sister, Gail. She said defendant threatened Sheila and carried out his threat despite the fact that Gail tried to talk him out of it and to physically restrain him. So determined to kill Sheila was defendant that he shot her five times. Stronger proof of specific intent is difficult to imagine.
In the evaluation of his insanity defense we again view the evidence in the light most favorable to the prosecution. Accepting the testimony of Drs. Medina and Super over that of Drs. Ritter and Cox we conclude that defendant failed to carry his burden of proof on the insanity issue.
Accordingly, the conviction and sentence are affirmed.
AFFIRMED.