557 So.2d 1085 (1990)
STATE of Louisiana, Appellee,
v.
Leroy BROWN, Jr., Appellant.
No. 20922-KA.
Court of Appeal of Louisiana, Second Circuit.
February 28, 1990.
*1086 Hunter, Scott, Blue, Johnson & Ross by Louis Scott, Monroe, for appellant.
Lee E. Ineichen, Joseph T. Mickel, Monroe, for appellee.
Before FRED W. JONES, Jr., NORRIS and LINDSAY, JJ.
FRED W. JONES, Jr., Judge.
The defendant Brown was charged by bill of indictment with one count of aggravated kidnapping (La. R.S. 14:44) and one count of armed robbery (La. R.S. 14:64). Convicted by a jury as charged, defendant was sentenced to the mandatory term of life imprisonment without benefit of probation, parole, or suspension of sentence on *1087 the aggravated kidnapping count and to 15 years imprisonment at hard labor without benefit of probation, parole, or suspension of sentence on the armed robbery count. The sentences were ordered to be served concurrently. Defendant appealed, contending the trial court erred in denying two motions for mistrial, in denying a motion for new trial and arrest of judgment, and that the sentence to life imprisonment constitutes cruel and unusual punishment.[1] Finding that no reversible error was committed, the convictions and sentences are affirmed.
Factual Context
At 11:00 p.m. on October 21, 1987, the victim, Richard Landers, was closing the store where he worked. The defendant approached the victim, pointed a pistol at him, and forced him into the back seat of a car driven by an unidentified accomplice. The defendant forced the victim at gunpoint to turn over his wallet which contained cash, credit cards, and identification documents. The victim later was forced into the car's trunk. After a two hour trip, the victim was forced into a closet in the defendant's residence. The defendant told the victim he wasn't the one they were supposed to kidnap, but he told the victim to get his boss's telephone number to see if he'd pay for the victim's release. At 2:02 a.m., as established by telephone company toll records, a phone call was made from the defendant's residence to the victim's wife. The victim was forced to tell her he had been kidnapped and that she should call his employer but not call the police. She notified the police. A recording device was placed on her telephone. Several other phone calls were taped. The caller later was identified as the defendant.
In mid-morning of October 22, the victim untied himself and escaped from the closet where he had been held captive. He found a pistol and unsuccessfully attempted to hold the defendant pending arrival of the police. The defendant returned to his residence for a short time and apparently made a telephone call demanding $50,000 cash in order to secure the release of the victim. He then fled through a wooded area and was apprehended the next day. After his capture, defendant, a former police officer, was advised of his Miranda rights. He asked the arresting officers why he was being charged with armed robbery and aggravated kidnapping since he hadn't taken anything and hadn't tried to extort any money.
Defendant pled not guilty and not guilty by reason of insanity. Although defendant argues that no motive was established, there was testimony concerning defendant's financial difficulties prior to the offenses.
Assignment of Error No. 2
Defendant contends the trial court erred in denying his motion for mistrial based on prejudicial statements from the State concerning defendant's exercise of his Fifth Amendment right against self-incrimination and his right to counsel. The record shows that the prosecutor asked Detective Smith, "Now at some point in time after you read Mr. Brown his rights did he mention that he didn't want to make a statement?" The defense objected, the witness and jury departed the courtroom and, after a hearing, the motion for mistrial was denied. The witness continued his testimony for the jury. The question the defense had objected to was not asked again nor was it directly answered. However, the prosecutor asked if defendant had said anything about why the offense happened. The detective said defendant "told us that he wished that he could tell us what it was about, but he knew that it would incriminate him and he couldn't tell us." The defense objected, the witness and jury departed the courtroom and a hearing was held on the defense motion for mistrial. The trial court denied the motion. Taken as a whole, the testimony of Detective Smith and Officer Stewart shows that defendant voluntarily initiated a conversation with them, although on a selective basis, about the charged offenses.
*1088 The first question objected to was not a comment on defendant's exercise of his right to remain silent. Rather, it was a poorly phrased foundation question. The second remark objected to was an acknowledgment by defendant of his right to remain silent.
Defendant refers to several U.S. Supreme Court decisions for the proposition that these references to defendant's post-Miranda silence mandate reversal.
In Griffin v. California, 380 U.S. 609, 85 S.Ct. 1229, 14 L.Ed.2d 106 (1965), the jury was instructed that where the defendant failed to testify to explain inculpatory facts within his knowledge the jury could consider that failure as tending to indicate the truth of those facts. The Supreme Court held that the Fifth Amendment forbids either comment by the prosecution or instructions by the court that such silence is evidence of guilt. Here, there was no such comment or instruction.
In Wainwright v. Greenfield, 474 U.S. 284, 106 S.Ct. 634, 88 L.Ed.2d 623 (1986), the defendant, on three occasions after being given Miranda warnings said he wanted to speak with an attorney before answering questions. At trial, the prosecutor suggested, over objection, that the refusals to answer demonstrated a degree of comprehension inconsistent with defendant's plea of insanity. The state law in effect at the time of the underlying offense required the state to prove sanity beyond a reasonable doubt. The Supreme Court held it is fundamentally unfair and a violation of due process to use one's post-Miranda silence to overcome a plea of insanity. Here, of course, the defendant has the burden to prove an insanity defense, La. C.Cr.P. Art. 652, against the presumption of sanity, La. R.S. 15:432. Thus, Wainwright is distinguishable. No such comments were made by the prosecutor.
In Doyle v. Ohio, 426 U.S. 610, 96 S.Ct. 2240, 49 L.Ed.2d 91 (1976), the Supreme Court held the prosecution can't use post-Miranda warnings silence to impeach trial testimony. Defendant Brown didn't testify.
The reasoning of these cases is that Miranda warnings contain implied assurances that silence will not be used against the suspect. The Louisiana jurisprudence follows that reasoning. However, such a remark does not mandate a mistrial under La. C.Cr.P. Art. 770 as defendant urges. Article 770 applies only to comments about defendant's trial silence. State v. Smith, 336 So.2d 867 (La.1976).
Equally, such a brief remark to post-Miranda silence does not mandate a mistrial or reversal where the trial as a whole was fairly conducted, the proof of guilt is strong, and the State made no use of the silence for impeachment. State v. Smith, supra; State v. Landry, 502 So.2d 281 (La.App. 3d Cir.1987); State v. Hicks, 483 So.2d 1200 (La.App. 4th Cir.1986).
Hicks also answers in the negative the defendant's assertion that such comment improperly was considered on the issue of his sanity. The brevity of the comments, two lines out of hundreds of pages of testimony, makes them harmless beyond a reasonable doubt. These issues are without merit.
Assignment of Error No. 3
During the testimony of LSP Trooper Blunschi, the trial court ruled, out of the jury's hearing, that Blunschi could testify about the defendant's statements concerning his financial problems but not about defendant's intention to live off his girlfriend. The jury returned and the prosecutor asked about the girlfriend's job. Blunschi quoted defendant as saying she had a good job and would support him. The jury was excused and, after argument, defendant's motion for mistrial was denied. Defendant chose not to have the jury admonished.
When gratuitous information supplied by a witness effectively jeopardizes the defendant's due process right to a fair trial, a trial court is required to follow Code of Criminal Procedure Articles 771 and 775. State v. Foss, 310 So.2d 573 (La.1975). These articles collectively provide for admonition or even declaration of a mistrial if the trial court is satisfied that prejudicial *1089 conduct has deprived the defendant of a fair trial.
Mistrial is a drastic remedy and should be declared only when unnecessary prejudice results to the accused. State v. Smith, 430 So.2d 31 (La.1983); State v. Alexander, 351 So.2d 505 (La.1977). The determination of whether such prejudice has resulted lies within the sound discretion of the trial judge. State v. Smith, supra; State v. Haynes, 339 So.2d 328 (La. 1976). A trial judge should grant a mistrial only where the prejudicial remarks result in substantial prejudice to defendant and make it impossible for him to obtain a fair trial. State v. Burdgess, 434 So.2d 1062 (La.1983); State v. Doolittle, 482 So.2d 896 (La.App. 2d Cir.1986).
Blunschi's statement was not about other inadmissible crimes. It provided a financial motive for defendant's offenses. It was relevant and not so prejudicial as to deprive defendant of a fair trial. The trial court did not abuse its discretion in denying this motion for mistrial. This assignment is without merit.
Assignment of Error No. 4
Defendant next assigns the trial court's denial of his motion for new trial and arrest of judgment on the grounds alleged therein. Not all the grounds were briefed on appeal. Therefore, those not briefed are deemed abandoned.
Defendant argues the jury was unjustified in finding the State overcame the burden of proof of defendant's insanity beyond a reasonable doubt (sic). Defendant misunderstands the law.
In Louisiana an adult defendant is rebuttably presumed to be sane and responsible for his actions. La. R.S. 15:432. A defendant who wishes to rebut the presumption must prove the affirmative defense of insanity by a preponderance of the evidence. La. C.Cr.P. Art. 652. The standard on appeal is to review the evidence in the light most favorable to the prosecution. State v. Roy, 395 So.2d 664 (1981).
The preponderance of the lay and expert testimony presented at trial, viewed in the light most favorable to the prosecution clearly did not establish that defendant was insane at the time of the offenses. The testimony showed that defendant appeared normal to his brother-in-law before the offenses. During the kidnapping, defendant made many efforts to keep the victim from seeing him, including covering the victim's head each time the trunk was opened. Defendant said he had grabbed the wrong man, but had the presence of mind to inquire whether the victim's employer would pay for his release. While being chased by police, defendant back-tracked, crossed his trail, and used red pepper to throw off police dogs. The defense psychiatric testimony did not include the relevant opinion that defendant could not distinguish right from wrong. The State's rebuttal witness, a psychiatrist, testified that the defendant was able to distinguish right from wrong. The jury had to decide the question. It decided against defendant. Its decision is justified by the evidence of record. This argument is without merit.
In this vein, defendant argues his motion for new trial should have been granted based on newly discovered evidence consisting of a post-trial blood test performed for a psychiatrist who had testified at trial. The results of the test confirmed the witness's original diagnosis, but the witness still had no expert opinion on defendant's legal sanity.
La. C.Cr.P. Art. 851(3) provides the requisites for a motion for a new trial based on newly discovered evidence: (1) the evidence must have been discovered since the trial; (2) failure to learn of the evidence at the time of trial was not due to defendant's lack of diligence; (3) it must be material to the issues at trial; (4) it must be of such a nature that it would probably produce an acquittal in the event of retrial. State v. Talbot, 408 So.2d 861, 884 (La.1981) (on rehearing).
The application of these precepts by the trial judge is entitled to great weight, and his discretion should not be disturbed on review if a reasonable man could differ as to the propriety of the trial court's action. *1090 State v. Prudholm, 446 So.2d 729, 735 (La.1984); Talbot, supra; State v. Jackson, 253 La. 205, 217 So.2d 372 (1968).
Applying these tenets, there was no abuse of the trial court's discretion in denying the motion for new trial on this ground. The newly discovered evidence, though material, merely corroborated a diagnosis expressed at trial from an expert witness who, even with benefit of the new evidence, still could not render a final opinion on defendant's legal sanity. Therefore, the trial court did not abuse his discretion.
Defendant next argues that one juror could neither read nor write and therefore a new trial is mandated. During voir dire, the juror apparently responded affirmatively to the court's general question concerning ability to read, write and understand the English language. Neither the state nor defendant questioned her further on this issue. The vast majority of evidence presented was testimonial; the few documents which were admitted were explained during direct examination and explored during cross-examination. The juror's difficulty was discovered when she completed the written jury poll. She subsequently testified to and demonstrated her limited ability to read. She said she read her Bible all the time.
To warrant a new trial based on juror disqualification, a defendant must show the exercise of reasonable diligence to discover the disqualification before verdict. La.C.Cr.P. Articles 851(4) and 855. State v. O'Blanc, 346 So.2d 686 (La.1977). To demonstrate due diligence, the defendant must show he questioned the juror on voir dire concerning the subject and the juror failed to disclose relevant facts. O'Blanc at 692.
Where the written exhibits were read to the jurors and corroborated facts testified to by witnesses, the ability to read and write is not of such great importance that its absence mandates the drastic remedy of mistrial. State v. Nicholas, 312 So.2d 856 (La.1975); State v. Winzer, 545 So.2d 1259 (La.App. 2d Cir.1989), and State v. Murphy, 465 So.2d 811 (La.App. 2d Cir.1985).
The defendant did not voir dire the juror on the subject; she was not totally illiterate; the documents were explained and were corroborative of other testimony. A new trial is not required. This argument is without merit.
Finally, defendant argues a new trial should have been granted because the State failed to prove all the elements of aggravated kidnapping. The only element defendant contests is the intent to force someone to give up something of value to secure the victim's release. Defendant argues there was no proof he was the person who placed a telephone call to victim's wife demanding a $50,000 ransom, and that there was no proof the call was made prior to the time when the victim escaped.
In order to satisfy due process standards, the record evidence, viewed in the light most favorable to the prosecution, must be sufficient for a rational juror to conclude that the essential elements of the crime were proven beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979). La.C. Cr.P. Art. 821 tracks the Jackson language in setting up a Louisiana standard pertaining to post-verdict motions for acquittal based upon insufficiency of the evidence.
La.R.S. 14:44 defines aggravated kidnapping as: "... the doing of any of the following acts with the intent thereby to force the victim, or some other person, to give up anything of apparent present or prospective value ... in order to secure a release of the person under the offender's actual or apparent control: ... (3) The imprisoning or forcible secreting of any person." Indeed, the intent to extort is the essential difference between aggravated kidnapping and simple kidnapping. State v. English, 367 So.2d 815, 823 (La.1979); State v. Hunter, 454 So.2d 131, 133 (La. App. 2d Cir.1984).
In viewing the evidence in this case in the light most favorable to the prosecution, it can be seen that the victim was forcibly kidnapped from his place of employment at approximately 11:00 p.m. He was taken to defendant's home where defendant told him, "You're the wrong man. You're not the man we're supposed to grab. Do you think your boss will pay to have you released?" *1091 The victim replied, "we can try." Defendant then had the victim, Richard Landers, call Mrs. Landers to obtain the phone number of the employer, Steve. The South Central Bell telephone record shows this call was made at 2:02 from defendant's home to Mr. Landers' home. The victim's wife was told to notify the employer of the kidnapping. The victim then was held in a closet until approximately 10:00 a.m. the next day, when he escaped. The defendant's voice was identified from the tapes by police officers who had known and worked with him.
These facts are sufficient to conclude beyond a reasonable doubt that defendant forcibly secreted and imprisoned the victim with the intent that a ransom be paid to secure victim's release. The intent was present when defendant decided to notify the employer. The record shows that the offense of aggravated kidnapping was proven beyond a reasonable doubt.
Assignment of Error No. 5
Defendant's last assignment of error is that the life sentence imposed for the aggravated kidnapping offense amounts to cruel and unusual punishment.
It is noted that La.R.S. 14:44 requires imposition of the sentence defendant received. Defendant does not cite any legal authority to support his proposition, nor does he attack the constitutionality of the statute of conviction.
La.C.Cr.P. Art. 878 provides: "A sentence shall not be set aside on the ground that it inflicts cruel or unusual punishment unless the statute under which it is imposed is found unconstitutional." The aggravated kidnapping statute, which also provides for a mandatory life term, is constitutionally valid. State v. Edwards, 287 So.2d 518 (La.1973). Therefore, this assignment is without merit.
Decree
For these reasons, the convictions and sentences for aggravated kidnapping and armed robbery are AFFIRMED.
NOTES
[1] Although defendant's trial counsel perfected five assignments of error, only four have been briefed by appellate counsel. The assignment not briefed is deemed abandoned. State v. Schwartz, 354 So.2d 1332 (La.1978); URCA Rule 2-12.4.